CHARLES E. FIZETTE

v.

JULIA FIZETTE.

*Filed at Ottawa June 19, 1893.*

1. DIVORCE—*on ground of cruelty.* The cruelty which the statute makes the ground for divorce must be extreme and repeated. It must be bodily harm, in contradistinction to mere harsh or even opprobrious language or mere mental suffering, and it must be grave, and endanger life or limb, or, at any rate, subject the person to danger of great bodily harm.

2. SAME—*what constitutes cruelty.* Mere angry or abusive words, menaces or indignities do not constitute cruelty, within the meaning of the statute. There must be extreme and repeated cruelty, which must consist in physical violence, and a single act of cruelty does not of itself constitute sufficient ground for divorce. There must be acts or threats which may raise a reasonable apprehension of bodily hurt.

3. GIFT—*husband taking title in wife's name—presumption.* A few weeks after his marriage a husband bought real estate, taking the deed in his wife's name, she contributing $500 to the purchase money and he $1500, and he afterward paid a like sum on the price : *Held,* that the presumption, in the absence of proof to the contrary, was, that the purchase was intended as a gift to the wife.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

Messrs. WARVELLE, WALSH & MADDEN, for the plaintiff in error :

A decree unwarranted by the allegations of the bill is erroneous.    *Gold* v. *Ryan,* 14 Ill. 53 ; *Rowan* v. *Bowles,* 21 id. 17.

To warrant a decree of divorce, the acts of cruelty must be such as actually endanger life, limb or health, or such as reasonably create an apprehension of bodily injury.    *Williams* v. *Williams,* 23 Fla. 324 ; *Meyers* v. *Meyers,* 83 Va. 806 ; *Carter* v. *Carter,* 62 Ill. 446 ; *Vanduzer* v. *Vanduzer,* 70 Iowa, 614 ; *Henderson* v. *Henderson,* 88 Ill. 248 ; *Nye's Appeal,* 126 Pa. St. 341.

Mere austerity of temper, petulance of manner, or even occasional sallies of passion, do not constitute cruelty or inhuman treatment. *Vignos* v. *Vignos,* 15 Ill. 186; *German* v. *German,* 57 Mich. 256; *Maben* v. *Maben,* 72 Iowa, 658; *Scott* v. *Scott,* 61 Texas, 119; *Wood* v. *Wood,* 80 Ala. 254.

It is the cherished policy of the law to maintain the integrity and unity of the marriage relation, particularly where the union has been productive of children. In pursuance of this policy, strong proof is required of the existence of the statutory grounds for a separation before a marriage can be annulled. Courts have no unlimited discretion to grant divorces in all cases where they may deem it expedient or advisable, nor should the marriage contract be dissolved for light and trivial causes. *Birkby* v. *Birkby,* 15 Ill. 120; *Sapp* v. *Sapp,* 71 Texas, 348; *Vignos* v. *Vignos,* 15 Ill. 186; *Faller* v. *Faller,* 10 Neb. 144; *Whaley* v. *Whaley,* 68 Iowa, 647; *Wood* v. *Wood,* 80 Ala. 254.

That which merely wounds the feelings, without being accompanied by bodily injury or actual menace, does not amount to legal cruelty. *Latham* v. *Latham,* 30 Gratt. 307.

Mr. BENJ. F. RICHOLSON, for the defendant in error:

This court will not disturb the findings of the trial court on a question of fact, unless manifestly wrong. *Sharpe* v. *Sharpe,* 116 Ill. 509.

As to what amounts to extreme and repeated cruelty, see *Farnham* v. *Farnham,* 73 Ill. 497; *Pow* v. *Pow,* 8 N. H. 307; *Ward* v. *Ward,* 103 Ill. 477.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill for divorce, brought by Julia Fizette, in the circuit court of Cook county, against Charles E. Fizette, on the 29th day of August, 1889. The grounds for divorce relied upon by complainant in her bill were extreme and repeated

cruelty. The defendant answered the bill, in which he denied all cruel treatment. He also filed a cross-bill, in which he charged the complainant with extreme and repeated cruelty. He also alleged that certain premises, No. 3216 Forest avenue, conveyed to the wife after marriage, belonged to him, and he prayed in the cross-bill that the complainant be decreed to hold the premises in trust for him. The court, on the hearing, on the pleadings and evidence, entered a decree of divorce in favor of the complainant in the bill. The property No. 3216 Forest avenue was vested in her, and the defendant was required to pay $12 per month for the maintenance of Charles E. Fizette, Jr., the only child of complainant and defendant resulting from the marriage.

It appears from the evidence that the parties were married on the 22d day of October, 1887, in Chicago. After the marriage they boarded with complainant's mother, a widow, about three weeks. Then they moved to No. 3216 Forest avenue, property which was purchased about two weeks after the marriage. They remained at this place, keeping house, until about the first of March, 1889, when this place was rented, and they moved to No. 1603 Wabash avenue, a flat over the store occupied by the defendant. The parties continued to reside at the last named place until the last of August or first of September, 1889, when complainant moved back to No. 3216 Forest avenue and filed her bill for divorce. It also appears that when the parties moved to Forest avenue and commenced housekeeping, complainant's mother and her two brothers went with them, and continued to reside with them until the complainant returned to the house on Forest avenue and filed her bill. The two brothers were there as boarders, while Mrs. Phillips, complainant's mother, assisted the complainant in the work about the house, and in this way rendered services sufficient to pay her board.

From the time the parties commenced living together there is much evidence in the record tending to prove that they did

not live pleasantly together, and from the testimony of the complainant, and her mother and brothers, it is apparent that there is much in the conduct of the defendant towards his wife which may be condemned. She testified: "I first noticed a change in his behavior to me about a week after our marriage. He was ugly and sullen and morose, and never smiling or pleasant. No matter what I would do I couldn't please him. He did not have occasional spells when he would be pleasant. I never knew him to be pleasing or to smile. His habits and manner toward me were always ugly when we were alone. In the presence of strangers he was a little better — that is, his own people; but if any of my friends came to the house he would deliberately insult them. Lady friends of mine would call and never call again." She also testified, before the birth of her first child, July 12, 1888, defendant refused to furnish her money to purchase baby clothing; that she was taken sick at twelve o'clock at night, and he did not go for a doctor until seven in the morning; that he failed to furnish her sufficient clothing; that he was stingy and penurious. Complainant also testified that the evening before she was taken sick he wanted to visit a friend living on Thirty-seventh street, and he wanted her to go with him, and it was about eighteen blocks from where they lived. She told him he had better take a car, but he said no, and compelled her to walk there and back. This he denied, and said he never required or compelled her to walk any distance. The complainant also testified that he required her to exercise his horse in cold weather. This he denied, and stated that she drove the horse for her own pleasure, at such times as she saw proper.

The complainant testified that the flat they occupied on Wabash avenue in the spring of 1889 was cold and disagreeable, and defendant refused to have it repaired or to keep the rooms warm or comfortable. In this, however, she is contradicted by the janitor, who testified: "I am janitor of the Kenmore flats, at Eighteenth street and Wabash avenue. I

know Mr. and Mrs. Fizette. Knew them when they lived at Wabash avenue and Sixteenth street. Was janitor there. They lived at 1603 Wabash avenue. My duties were to take up coal and care for building. I furnished Mrs. Fizette with both kinds of coal, put in a box. I put half a ton of chestnut coal in one box. Generally I called to know if coal is needed, and if they told me it was, I brought it up. I generally noticed the box before the coal was all used up. On several occasions I made a fire for them in the kitchen stove. They had chestnut coal and soft coal. They had no furnace coal in the flat. I would know if they had,—it was my business to furnish it. I never refused to furnish coal to Mrs. Fizette, and she never made any complaint about getting it. I don't know how much coal they used while they were there, but I know they used as much coal as any family in the building. There were no complaints about coal not being furnished them. I always told them to let me know when they wanted it, and I would give it to them. I had frequent occasion to go into the house. I found it comfortable, and there was a fire in the sitting room. I never heard any complaint by any one about the lack of warmth."

The complainant also testified that the defendant would refuse to speak to her for a week at a time, and that he had not given her proper attention when riding in the street cars. She also testified to other matters of a like character. There is, however, no evidence in the record, that we have been able to find, that the defendant ever struck the complainant or inflicted upon her any bodily harm. There is no claim that any act of violence was ever resorted to, except on one occasion, and this in July, 1888, before the birth of the first child. Complainant's account of this occurrence was, in substance, as follows: Complainant and her mother had gone out and procured a dish of ice cream. Defendant came in and refused to pay for it. When told he would have to pay for it, he finally gave the porter twenty cents. The three parties then stepped

on the sidewalk, and when the complainant undertook to take the defendant's arm she said "he give me a push and nearly throwed me off the sidewalk." On cross-examination she said: "He gave me a pretty hard push with his elbow, in the ribs. I went to take his arm, and he gave me a nudge and I nearly fell off the sidewalk. It did not leave any marks." The defendant's account of this transaction was as follows: "I went to the ice cream saloon, and found them,—complainant and her mother. They had finished their ice cream when I came there. I had forty cents in my pocket. I had been complaining of a pain in my back, and my wife said, 'You had better get a porous plaster.' When I got to Thirty-first street I said, 'Where is my porous plaster coming from?' as I had to pay for the ice cream. She said, 'Never mind the plaster,' and I said, 'All right.' We then walked down the street, with her mother on the outside, my wife in the center, and myself inside. We were swinging while on the walk, and all of a sudden she stumbled and left my arm, and went towards her mother. The first I heard of my having pushed her or handled her harshly was when she stated it here."

The principal part of the complaint made, however, in this case, is not what the defendant did, but what he failed to do,— that he neglected his wife, failed to furnish necessary provisions for the home, and clothing for the wife and child. The defendant, however, on this branch of the case, testified, that during his married life, up to the time the bill was filed, he paid out for household expenses for himself and family $3400, and presented a book containing an itemized statement of the amount paid out. Many of the items the complainant was compelled to admit.

Aside, however, from the evidence of the defendant in reference to moneys advanced by him for the support of complainant, there is another fact which has an important bearing on this branch of the case. Within two or three weeks after the marriage the defendant purchased the property No. 3216

Forest avenue for $7000, including the furniture. Two thousand dollars was paid down,—$500 being furnished by complainant and $1500 by the defendant. In one year from the purchase the defendant paid $1500 more, making in all $3000 paid by the defendant. For the residue of purchase money a mortgage on the property of $3500 was assumed. The property thus purchased was conveyed directly to the complainant, and she still holds the title. The defendant is a man of small means,—a tailor by trade,—conducting a small business. Under such circumstances, the gift of the Forest avenue property to his wife does not indicate that he was attempting to withhold from her the means of support or the necessaries of life. Had he failed in his duty to furnish her with the necessaries of life, she had it within her power to raise money on the property to supply her wants. This she has availed of since the filing of a bill, by mortgaging the property to raise money to carry on this litigation.

But conceding that the defendant neglected and failed to discharge the duties that a husband owes to a wife, and conceding that his conduct was not such as it should have been, the question to be determined by this record is, whether the defendant has been guilty of extreme and repeated cruelty, within the meaning of the statute. If he has, then the decree was right and will have to be sustained, otherwise not.

In *Henderson* v. *Henderson*, 88 Ill. 250, we had occasion to consider what the legislature intended by the use of the language, "extreme and repeated cruelty," found in the statute entitled "Divorce." It is there said: "The General Assembly has, in plain and unmistakable language, defined the offense to be 'extreme and repeated cruelty.' This court, as well as all other courts acting under similar statutes, has held that it must be bodily harm, in contradistinction to mere harsh or even opprobrious language or mere mental suffering,—that the cruelty must be grave, and endanger life or limb, or, at

any rate, subject the person to danger of great bodily harm." And this is the rule of the English ecclesiastical court. (*Evans* v. *Evans*, 1 Hagg. C. 35.) This is referred to as the leading case in that court.

But the question as to what constitutes the cruelty contemplated by our statute has been before this court on several occasions, and has undergone mature consideration. (See *Vignos* v. *Vignos*, 15 Ill. 186; *Turbitt* v. *Turbitt*, 21 id. 438; *De LaHay* v. *De LaHay*, id. 252; *Harmon* v. *Harmon*, 16 id. 90; *Birkby* v. *Birkby*, 15 id. 120; *VonGlahn* v. *VonGlahn*, 46 id. 135.) In *Embree* v. *Embree*, 53 Ill. 394, it was held that mere angry or abusive words, menaces or indignities do not constitute cruelty, within the meaning of the statute,—there must be extreme and repeated cruelty, which must consist of physical violence. It was also held that a single act of cruelty does not constitute sufficient ground for divorce. In *Harmon* v. *Harmon*, 16 Ill. 90, in considering this statute, it is said: "There must be acts or threats which may raise a reasonable apprehension of bodily hurt. The causes must be grave and weighty, and show a state of personal danger incompatible with the duties of married life. It is not mere austerity of temper, petulance of manner, rudeness of language, a want of civil attentions, occasional sallies of passion, denials of little indulgencies and particular accommodations, and which do not threaten bodily harm. These are not legal cruelty." See, also, *Hitchins* v. *Hitchins*, 140 Ill. 326, and *Fritz* v. *Fritz*, 138 id. 436.

Courts are powerless to grant divorces for causes other than those specified in the statute, and the rule is well settled in this State, and also in other States where the ground relied upon is extreme and repeated cruelty, that the cruelty must endanger life or limb, or, at least, subject the person complaining to danger of bodily harm. No proof of that character was introduced in this case. There is no pretense that the

defendant was guilty of any act of personal violence except on one occasion,—the night complainant alleges he gave her a "punch" with his elbow. This assault, viewing it according to the testimony of the complainant herself, was not of an aggravated character. No bruises or marks were left on the person of the complainant, nor was she injured. But if the assault had been an aggravated one, it would not, of itself, be ground for divorce. One act of cruelty is not sufficient,— the cruelty must, under the statute, be repeated, and where the proof fails to show a repetition of cruel treatment there is no ground for divorce.

It is also claimed that the court erred in refusing to grant any relief to defendant in regard to the Forest avenue property. The defendant paid, when the property was purchased, $1500 of the purchase money, and subsequently paid $1500 more. He also paid interest on the incumbrance of $3500 on the property, and taxes. In regard to these facts there is no dispute. But when the property was purchased the defendant voluntarily had the conveyance made to his wife. The presumption is that the purchase was intended as a gift to the wife, and we find no sufficient evidence in the record to overcome that presumption. But as the evidence was insufficient to sustain the decree, the decree of the circuit court will be reversed and the cause remanded.

*Decree reversed.*

SHOPE and BAILEY, JJ., dissenting.