PATRICK HURSEN

*v.*

MARGARET HURSEN.

*Opinion filed October 24, 1904—Rehearing denied December 8, 1904.*

DEEDS—*deed procured by wife from husband by fraud may be set aside.* A court of equity has power to set aside a deed from husband to wife procured by her by fraudulently pretending affection for him and promising to be a faithful wife, with the intention of abandoning him when she obtained the property.

WILKIN, J., dissenting.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. C. G. NEELY, Judge, presiding.

This was a bill in chancery filed by the plaintiff in error, against the defendant in error, to set aside a deed made by plaintiff in error to defendant in error on April 19, 1901, and recorded in the office of the recorder of deeds in Cook county, to a house and lot located in the city of Chicago, and known as No. 18 Colorado avenue. An answer and replication were filed and upon a hearing in open court the bill was dismissed for want of equity, and the plaintiff in error has brought the record to this court for review by writ of error.

It appears from the pleadings and proofs that plaintiff in error was a widower, fifty-five years of age; that he had resided in the city of Chicago for upwards of thirty years; that he had accumulated property of the value of about $18,500, which was invested in productive real estate located in said city; that he had been twice married; that he had five children by the first marriage and three by the second; that the children by his second marriage were all girls, and ranged in ages from five to ten years; that defendant in error was a widow, forty-two years of age; that she resided in the same section of the city of Chicago in which plaintiff in error resided, and they had known each other, in a casual way, for a number of years; that in December, 1900, plain-

tiff in error commenced keeping company with defendant in error and in the following month of January proposed marriage to her; that defendant in error said to him she would marry him if he would buy her a seal skin coat, a diamond ring and deed her a portion of his property; that the plaintiff in error bought the coat and ring and made her a present of $50 in cash, and in the month of March took her to the State of Indiana to view a farm that he was about to trade one of his houses and lots in Chicago for, and which he proposed to occupy, after their marriage, as a summer home, with a view for her to determine if she would be satisfied to live upon the farm; that shortly thereafter, and on the 17th day of April, 1901, the parties were married in the State of Indiana; that the plaintiff in error had consummated the exchange for the Indiana farm, which was worth $5000, and just before the marriage ceremony was performed took from his pocket a deed for a half interest in the farm to defendant in error and offered it to her. She examined the deed but objected to accepting the same, and demanded that plaintiff in error convey to her the premises in question, which were worth $8000, and for a time declined to marry plaintiff in error unless he would convey to her said premises; that after talking with the priest who was to perform the marriage ceremony, and after deliberating upon the subject, defendant in error took into her possession the deed to the half interest in the Indiana farm and the marriage ceremony was performed; that within one hour after the mariage defendant in error took the train for Chicago, telling plaintiff in error when he conveyed to her the Colorado avenue property she would return to him the deed for the half interest in the farm and be to him a wife. The plaintiff in error remained in Indiana two days, when he followed her to Chicago, and there said to her he had married her against the advice of his friends, and, in order to have peace and save talk, if she would return to the farm with him and live with him and be a faithful wife he would convey to her

the Colorado avenue property, and upon her promise so to, do he executed and delivered to her a deed for said property and she returned to him the deed for the half interest in the Indiana farm, and they returned to the Indiana farm on the day the deed to the Colorado avenue property was executed and delivered, and she occupied his bed for three nights, when she left it and took another room and from that time refused to cohabit with him. She remained on the farm a part of the time up till the month of September, in the year of their marriage, when she returned to Chicago. While she was upon the farm the plaintiff in error, at her request, expended thereon $2500 in improvements, furnished a servant to do the work in the house and provided the defendant in error a horse and buggy in which to drive about the country.

F. S. BAIRD, for plaintiff in error.

BENEDICT J. SHORT, for defendant in error.

Mr. JUSTICE HAND delivered the opinion of the court:

It is undoubtedly the law that a husband, except as to his creditors, if he sees fit, may convey to his wife the whole or any part of his property, and that if the transaction is free from fraud or duress she may hold the same as against the husband or his heirs. If, however, the transfer is procured through the fraud of the wife, equity has the power to set aside the conveyance and to restore the property to the husband.

In *Stone* v. *Wood*, 85 Ill. 603, Wood and his wife lived in Galesburg. He went to Bloomington to obtain work. His wife wrote him, representing to him if he would convey his homestead to her she would sell it for $1800, pay his debts, go where he was and turn over to him the balance remaining from the sale of the property. Wood conveyed the title to her through a third party, whereupon she conveyed the property to Stone, who held it for her benefit. The

court, upon bill filed by Wood, decreed that the property be restored to the husband. On page 609 the court said: "There can be no doubt that a man may have relief from such frauds as this, in equity, against his wife. So may the wife against the husband. There is nothing in the marriage relation that can prohibit it. If it were not so, there would be a wrong without a remedy. That courts are seldom called on in such cases does not militate against the rule. It is a fraud that is not sanctified by that relation. When either party becomes untrue to his or her vows and marital duties and by fraud obtains an unjust advantage of the other, equity will as readily afford relief as it will between other persons not occupying that relation."

In *Bayse* v. *Bayse,* 152 Ind. 172, (52 N. E. Rep. 797,) it was held that a voluntary conveyance by a husband to his wife, fraudulently procured by the wife through shamming affection for him and promising to be a dutiful wife, with the intent of abandoning him after obtaining such conveyance, would be set aside in equity. To the same effect is *Brison* v. *Brison,* 75 Cal. 252, *Meldrum* v. *Meldrum,* 15 Col. 478, and *Turner* v. *Turner,* 44 Mo. 539. In *Turner* v. *Turner, supra,* the court said: "A wife in whom her husband reposed the strictest confidence might well be calculated to exert an influence on his mind and obtain the title to property in her own name. If it was done with an honest intent to secure a home for herself and her offspring, the transaction would not only be legal, but praiseworthy; but if the influence was exerted with the design of despoiling the husband and then abandoning him, the law would condemn and stigmatize the transaction."

The controlling question in this case is, did defendant in error obtain the deed to the Colorado avenue property in good faith, or did she do so by means of false promises and representations made to plaintiff in error, with the design of obtaining title to said property and then abandoning him? The plaintiff in error appears to have been greatly infatuated with

defendant in error, and ready to make any sacrifice to induce her to marry him and after their marriage to live with him in peace. She, on the contrary, appears to have been actuated only by a desire to possess herself of his property. Before the marriage she obtained from him $50 in cash, a seal skin coat which cost $300, and a diamond ring which cost $100. When the marriage ceremony was about to be performed she expressed dissatisfaction with his offer to convey to her unencumbered real estate worth $2500, and threatened to abandon the marriage unless he would convey to her property worth $8000,—nearly one-half his estate. After conferring with the priest and deliberating upon the matter she took into her possession the deed conveying to her a one-half interest in the farm and the marriage ceremony was performed. She then abandoned the plaintiff in error's home, returned to Chicago and refused to cohabit with him until he conveyed to her the Colorado avenue property. Relying upon her promises to return to Indiana with him and be a faithful wife, the plaintiff in error conveyed to her the said property. After obtaining title to the Colorado avenue property the defendant in error lived with the plaintiff in error three days as his wife, and then, without any apparent cause, severed their marital relations, but remained upon the farm a part of the time until the following fall, when she returned to the city. The conduct of the plaintiff in error towards the defendant in error appears to have been honorable, while that of the defendant in error towards plaintiff in error was most reprehensible and should receive the most severe condemnation, and must be held, in law, to amount to a fraud upon the rights of plaintiff in error in obtaining title to the Colorado avenue property. In *Brison* v. *Brison, supra,* it was said: "The plaintiff was induced to make the deed by the confidence which he had in his wife, and the belief thereby engendered that she would perform her promise. But for that he would not have made it. The betrayal of such confidence is strictly fraudulent and gives rise to a constructive

trust. This is independent of any element of actual fraud." As was well said by the Supreme Court of Indiana in *Bayse* v. *Bayse, supra:* "Married women have been emancipated by the statutes of this State. They must respond for frauds practiced upon their husbands, as well as for those upon others." To permit the defendant in error to hold the title to said property, as against the plaintiff in error, under the circumstances of this case as disclosed by this record, would be to shock the sense of justice of a court of conscience.

The decree of the circuit court will be reversed and the cause remanded to that court, with directions to enter a decree setting aside and annulling the deed from plaintiff in error to defendant in error for the Colorado avenue property.      *Reversed and remanded, with directions.*

Mr. JUSTICE WILKIN, dissenting.