Merry Fahrney Berlingieri, Appellee, v. Arturo
Berlingieri, Appellant.

Gen. No. 40,194.

120

Heard in the third division of this court for the first district at the June term, 1938. ■■■■■ Opinion filed October 26, 1938. Rehearing denied November 9, 1938.

KAMFNER, HALLIGAN & MARKS, of Chicago, for appellant; EDWIN A. HALLIGAN and SAMUEL M. LANOFF, both of Chicago, of counsel.

FRANK E. CANTWELL, of Chicago, for appellee.

MR. JUSTICE DENIS E. SULLIVAN delivered the opinion of the court.

This cause comes to this court on an appeal from a decree of divorce entered in the circuit court in favor of plaintiff Merry Fahrney Berlingieri and against defendant Arturo Berlingieri on the ground of cruelty.

From the testimony it appears that the plaintiff claims she resided in Chicago, Illinois, prior to her marriage to said defendant and that said defendant prior thereto resided in Rome, Italy; that plaintiff and defendant were married in Harrison, New York on July 31, 1937; that after they were married plaintiff lived at the Lowell hotel in New York and defendant lived at the Gladstone hotel in New York; that at the request of plaintiff they did not live together.

The testimony further shows that thereafter on August 3, 1937, plaintiff and defendant left New York to go to Los Angeles, California, plaintiff going by train and the defendant by automobile; that plaintiff

arrived in Los Angeles on August 7th and the defendant arrived there on August 9th; that they went to the Ambassador hotel in Los Angeles, but occupied separate rooms; that this was done at the request of plaintiff.

Counsel for defendant calls our attention to plaintiff's brief wherein statements of evidence are made which do not appear in either the abstract or the record. It is unfortunate that counsel for plaintiff did this.

When this suit was commenced plaintiff was residing in California. The affidavit filed by her authorized agent to obtain service on defendant by publication gave defendant's residence as Hollywood, California. Said document was filed on September 10, 1937, and stated defendant's place of residence could not be ascertained, but that his last address was 1929 Woodlyan avenue, Hollywood, California. Service was had on that affidavit by publication and thereafter on October 18th defendant filed a special appearance challenging the jurisdiction of the court.

October 26, 1937, a motion was made by the defendant to dismiss the suit, together with an affidavit which stated:

"That affiant and the plaintiff in said action were married on the 31st day of July, 1937, at Harrison, New York and resided together in the State of New York until the 3rd day of August, 1937, at which time affiant left the said State of New York and went to Los Angeles, California, arriving there on the 9th day of August, 1937; that upon his arrival in Los Angeles, California he met the said plaintiff and plaintiff and affiant resided together at Los Angeles, California until the date of their separation, towit, on or about the 17th day of August, 1937; that affiant is still residing in the State of California and has never resided in the State of Illinois.

"That affiant is a native of Italy and ever since his birth has been a resident of Italy. That affiant has never abandoned his residence in Italy and has never at any time intended to, nor did he establish, a residence in the State of Illinois. That affiant and the said plaintiff have never resided together in the State of Illinois.

"That affiant is informed and believes and upon such information and belief states that the said plaintiff was not a resident of the State of Illinois for a period of more than one year prior to the date of the filing of said suit.

"That on the 10th day of September, 1937, the date of the filing of said suit number 37 C 11225, the said plaintiff was actually and physically residing in Los Angeles, California."

Thereafter on November 4, 1937, an affidavit was filed on behalf of plaintiff in opposition to defendant's motion to dismiss, which reiterated that plaintiff is a resident of the city of Chicago and admitted that the defendant was at one time a resident of Italy, but that he had abandoned his residence in Italy and has acquired residence in the State of Illinois, but no facts are given substantiating such statements. There is no evidence that defendant was in the State of Illinois at any time. It is admitted by counsel for both plaintiff and defendant that the domicile or residence of the wife is, under the law, the same as that of her husband.

In *Cooper v. Beers,* 143 Ill. 25, at page 32, the court said:

". . . after the marriage of Mrs. Cooper, and so long as the relations between herself and her husband were not adverse, his domicile was her domicile and changed with his throughout their married life. Story's Conflict of Laws, (4th ed.) sec. 46, and note 1, on p. 58; *Davis v. Davis,* 30 Ill. 180; *Kennedy v.*

*Kennedy,* 87 id. 250; Am. and Eng. Ency. of Law, p. 868.''

Chapter 40, par. 3, sec. 2, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 109.170], entitled, ''Divorce'' reads as follows:

''3. RESIDENCE.] § 2. No person shall be entitled to a divorce in pursuance of the provisions of this Act, who has not resided in the State one whole year next before filing his or her complaint or petition, unless the offense or injury complained of was committed within this State, or while one or both of the parties resided in this State.''

There being no sufficient proof of residence of the defendant in the State of Illinois, or even any proof that defendant had ever been within the State borders, nor any proof of residence in the State of Illinois of plaintiff after she had contracted this marriage, therefore we are compelled to presume her residence or domicile to be that of her husband. It then follows that neither plaintiff nor defendant had a residence in the State of Illinois for one whole year next preceding the commencement of suit in compliance with the provisions of the statute. It would indeed be an anomalous situation to say that a husband could have a domcile or residence in one State or country and his wife in another and yet be regarded as being one in the eyes of the law. Such an absurdity was evidently recognized by plaintiff when her affidavit was filed alleging that the defendant *intended* to make the State of Illinois his residence. Whatever defendant's future intentions were in that regard would have no effect or vary the words contained in the statute, which read: ''*who has not resided* in the State one whole year next before filing his or her complaint or petition.''

It is not contended that the so-called acts of cruelty were committed within the State of Illinois, but on the

contrary, the evidence shows the alleged acts of cruelty were committed in the State of California.

While we consider the question of jurisdiction fatal to plaintiff's case, we shall further consider the facts as shown by the record.

The testimony in substance is as follows:

A young woman and a young man, plaintiff and defendant herein, were married in New York State and after the ceremony they occupied rooms separate and apart in different hotels, later leaving for California, the wife traveling by train and the husband traveling by automobile. Plaintiff engaged separate rooms on different floors in a hotel in Los Angeles, California. The wife, plaintiff herein, was known in the hotel as "Miss Fahrney." By what name the husband, defendant herein, who arrived at the same hotel two days later, was known at that hotel does not appear in the record except incidentally.

A day or two after their arrival at said hotel, while defendant was sitting in plaintiff's apartment taking breakfast with his wife, according to plaintiff's testimony, a waiter who was serving their meal and who evidently was acquainted with plaintiff, addressed her as "Miss Fahrney" and welcomed her by saying he was glad to see her at the hotel. Plaintiff contends that defendant thereupon became very much enraged because the waiter had so addressed her and stated that she was a baroness; that defendant thereupon struck plaintiff; that this occurred without plaintiff and defendant having had any previous quarrel or dispute.

Plaintiff further claims that a day or two later while she was having her hair dressed, defendant came to her room for some unknown reason and struck her, thereby driving hairpins into her head; that subsequent thereto defendant struck her for some reason unknown to plaintiff while newspaper men were waiting outside the room to take their photographs, which were thereupon taken; that plaintiff made no complaint of

defendant's conduct to the newspaper men nor did plaintiff object to posing with defendant with the so-called "black eyes" which she alleged she received a few moments before the newspaper men came into the room.

All acts of cruelty as charged by plaintiff were flatly denied by defendant.

The acts of cruelty complained of were alleged to have been perpetrated prior to August 20th, and in plaintiff's testimony she alleged that she continued to cohabit with defendant as his wife until August 17th. If the acts of cruelty were committed at the time plaintiff has claimed they were, she evidently did not fear bodily harm as she continued to live with the defendant thereafter without objection.

The rule of law in this State regarding what acts of cruelty are sufficient to entitle a party to a divorce has been the subject of discussion and decision by our Supreme Court on many occasions. The cruelty to which the statute refers has been construed to mean physical acts of violence, bodily harm such as endangers life or limb; such acts as raise a reasonable apprehension of bodily harm and show a state of personal danger incompatible with the marriage state. Bad temper, petulance of manner, rude language, want of civil attentions or angry or abusive words are not sufficient grounds for divorce on the ground of extreme and repeated cruelty. *Trenchard v. Trenchard,* 245 Ill. 313; *Fizette v. Fizette,* 146 Ill. 328; *Embree v. Embree,* 53 Ill. 394; *Vignos v. Vignos,* 15 Ill. 186; *Maddox v. Maddox,* 189 Ill. 152.

There is not sufficient evidence in this case to prove that the acts of cruelty charged were committed in anger, without justifiable provocation or that the plaintiff was seriously hurt on either occasion, nor does the evidence show that plaintiff might reasonably fear she was in danger of receiving bodily harm at the hands of her husband if she continued to live with him. (Some

of plaintiff's witnesses called the striking "a slap".)
On the contrary the evidence shows that plaintiff telephoned to the defendant, after the alleged assault and left a written message which appears in evidence, using her maiden name, asking that he come to see her. This mute evidence served as an impeachment of plaintiff. Together they visited night clubs that same evening in Hollywood. The proof is ample that plaintiff magnified any so-called acts of cruelty by defendant.

In reply to a question asked of plaintiff by her counsel as to how she treated her husband, which was the only evidence offered by plaintiff on that issue, plaintiff replied, "As kindly as was possible." Just what this means as proof as to what her attitude toward defendant was, or as to what she had done for him as a wife, we are unable to fathom. Just why plaintiff insisted that they occupy separate rooms is not explained by her. In her complaint she did not allege that she had been without fault or had been a kind and dutiful wife. Plaintiff's testimony on this important subject was very vague and proved nothing.

At this time we might call attention to lack of evidence or proof of any wifely care or devotion or attention having been exhibited by plaintiff towards her husband.

The uncontradicted evidence of defendant is that when he arrived in California his wife told him that she was going out with a gentleman for the evening and he must not be surprised if she called her friend "darling" and "honey;" "that this was America." The evidence further shows that plaintiff wanted defendant to go for a trip around the world by himself and she would meet him in Paris later. We are not impressed by these actions, as proof of conjugal affection and devotion.

Claim is further made by defendant of lack of proof and of plaintiff's failure to prove her case by a preponderance of the evidence.

In a case of this character, where the lack of jurisdiction and the lack of proof is so pronounced, we think it well to consider the public policy of this State with relation to divorce as defined by our Supreme Court. In matters of divorce the State itself is always a party to the suit. Such public policy of the State does not favor divorce but, on the contrary, favors the maintaining of the family relation. In referring to the power which is vested in the chancellor to take action in a divorce proceeding entirely without and beyond the issues made by the parties, our Supreme Court in the case of *Decker v. Decker*, 193 Ill. 285, at page 287, said: "A proceeding for the dissolution of the marriage relation involves interests other than those of the husband and wife who are the parties complainant and defendant. The separation of husband and wife by judicial decree concerns vitally the children, if any, of the discordant couple, and affects, in a general way, the home life and domestic relations of the people, the public morals, the prevailing system of social order, and, in a greater or lesser degree, the welfare of every citizen. These interests are not represented by either of the parties to a divorce proceeding, but the law has not left them unprotected. It is within the power of the chancellor of whom a decree of divorce is asked to stand as a representative of the public, and, in a proper case, to refuse to grant the decree though the grounds of such refusal be without the issues made by the pleadings of the parties.

" . . . 'The State is interested in the preservation of the marriage relation, since this relation is promotive of morality and inures to the perpetuation of its citizens. . . . Since, as citizens of the State, the relatives and children of the parties have an interest in

the marriage but cannot be protected, as they cannot become parties to a divorce suit, the interest of such persons is said to be represented by the court. In some States the court is relieved of such anomalous position by statutes authorizing the appearance of a prosecuting attorney or other officer to represent the State. . . . ' ''

In the case of *Winning v. Winning,* 366 Ill. 57, at page 64, the Supreme Court said:

''The State has always been an interested third party in all divorce actions under the public policy of this State and we have consistently held to a rigid enforcement of the provisions of the Divorce act. (*Trenchard v. Trenchard,* 245 Ill. 313; *Leland v. Leland,* 319 id. 426; *Decker v. Decker,* 193 id. 285.) ''

As shown by these authorities the public policy of the State is, as we have heretofore stated, not to favor the granting of a divorce unless there is a strict compliance with the divorce statute. The chancellor has wide discretion and is not confined to the pleadings or the proof offered by the parties. His duty is to see that the interest of the State and its public policy are protected and enforced in all cases of this character. Frequently, this duty which has been cast upon the chancellor is not observed, not alone because the chancellor has neglected his duty, but because he has no means at hand with which to search out the facts. We think the divorce situation in this jurisdiction calls for plain speaking. While there are *bona fide* cases where the divorce statute gives a deserved relief, yet anyone familiar with the situation has good reason to believe that a great number of divorce cases are tainted by collusion, perjury and fraud. The obtaining and granting of divorce has almost become an industry. It is now time that those charged with upholding the law clean these ''Augean stables.''

If a provision were made that a proctor or person be appointed by the court, and held solely responsible

to the court, so that such person could investigate fully, searching out the facts to determine whether or not the public policy of the State was being observed in questionable cases, this would aid the court greatly in arriving at a correct conclusion and beneficial results would flow therefrom.

On the other hand where the rule of public policy of the State is not observed and divorces are granted without a strict compliance with the provisions of the statute, such action results in lowering the public respect for courts and destroys the high esteem in which they should be held, thus putting our courts on a basis of what has often been termed in other jurisdictions as "divorce mills."

From a review of this record we do not believe that either the plaintiff or the defendant was a resident of the State of Illinois under the provisions of the law or that either had a domicile in the State of Illinois for one whole year prior to the filing of the suit for divorce, nor do we believe the so-called acts of cruelty complained of occurred. For the foregoing reasons the suit was wrongfully brought in this State and in holding otherwise the learned chancellor was in error.

Further, we do not believe that the proof made by plaintiff was such as preponderates in her favor nor has she proven the defendant guilty of extreme and repeated cruelty, as is required by the laws of this State.

For the reasons herein given, the decree of the circuit court is hereby reversed.

*Decree reversed.*

HALL, P. J., and HEBEL, J., concur.