[No. 1530. Decided February 7, 1895.]

MARTIN ROZELL, *Respondent*, v. OSCAR VANSYCKLE *et al.*, *Defendants*, GEORGE J. GARDINER *et ux.*, *Appellants*.

TRUSTS — ORAL AGREEMENT TO CONVEY — STATUTE OF FRAUDS — CANCELLATION OF CONTRACT — PARTIES IN PARI DELICTO — SPECIFIC PERFORMANCE.

Where the legal title to land has been transferred upon the parol promise of the grantee, made in bad faith and with the intent to deceive, that he would hold same in trust for the grantor, the transaction does not come within the statute of frauds, as trusts arising from fraud are excepted from its operation.

Where one, taking advantage of the ignorance and weak intellect of another, and of the confidence reposed by the latter in his superior business sagacity, induces such person to convey to him a tract of land for the purpose of putting it beyond the reach of an imagined claim of a third person, the parties do not stand *in pari delicto,* and the grantor is entitled to recover the land from such fraudulent grantee, and from others taking title from such grantee with full knowledge of the fraud.

An indefinite and uncertain agreement for the sale of land will not be enforced by the courts.

*Appeal from Superior Court, Yakima County.*

*Jones & Newman,* for appellants.

*John G. Boyle,* and *Reavis & Milroy,* for respondent.

The opinion of the court was delivered by

GORDON, J.—Respondent brought this action in the superior court of Yakima county to secure the cancellation of two deeds to real property described in the complaint, one given by the respondent to the defendant Oscar Vansyckle, the other given by said Oscar Vansyckle to the appellant George J. Gardiner. The defendants Vansyckle and the appellants Gardiner, ap-

pearing separately in the court below, interposed demurrers which were overruled, and thereafter filed separate answers. Trial was had upon the issues joined, and judgment rendered in favor of plaintiff; from which judgment the appellants Gardiner alone appealed.

The first assignment of error urged upon our attention is the ruling of the court upon the general demurrer to the complaint in the action. The pleadings in the cause are very voluminous, and it is enough to say that the character of the complaint is sufficiently disclosed in this opinion, and for reasons hereafter set out in disposing of the case upon the evidence, we think that the demurrer was properly overruled.

The complaint alleges substantially, and we think the evidence abundantly shows, that in May, 1890, the respondent was the owner of eighty acres of valuable land in Yakima county. He was then an old man, very ignorant, could neither read nor write, was mentally weak, and, as shown by the testimony of his immediate neighbors and persons who had been intimately acquainted with him for years, was incompetent to attend to ordinary business, and wholly incapable of managing or transacting affairs of importance ; that he had theretofore had dealings with one J. H. Conrad, resulting disastrously to him in a financial sense ; that he was easily alarmed, and was easily imposed upon, and that the defendant Vansyckle was greatly his superior in mental sagacity ; that at and immediately prior to executing the deed to Vansyckle, in May, 1890, he feared that Conrad was seeking to establish a false claim against him, and, for the purpose of protecting the land in question therefrom, he sought the advice of Vansyckle. It is set out in the complaint and fully established by the evidence, that the

respondent had implicit confidence in Vansyckle and relied upon him to advise him safely as to the best means of protecting his property against what he apparently considered the unauthorized and unjust claim of Conrad.  He seemed to think that he was unequal to cope with Conrad, and there is evidence tending to show that he had theretofore been the victim of a fraud practised upon him by Conrad.  But, however that may be, the evidence is abundant to establish the fact that his mind was filled with the belief that Conrad was attempting to unjustly establish a false claim, which would be asserted against the land in question, and under such circumstances he sought the advice of Vansyckle, in whom, as has been said, he appeared to have implicit confidence and upon whose counsel he unreservedly relied.  It further appears that, as a result of his conference with Vansyckle, respondent executed a deed of the premises and delivered the same to said Vansyckle; that the respondent was induced thereto by the assurances of the said Vansyckle that he would hold the premises in trust for the plaintiff, and reconvey them to plaintiff upon his request.  The testimony shows that prior to the making of the deed Vansyckle assured him that he had had experience in transactions of like character with other parties, and also encouraged the respondent to make the deed, and by his conduct and conversation added greatly to the fears, apprehensions and excitement under which respondent then labored concerning Conrad.  No consideration was paid or promised on the part of Vansyckle for this conveyance.  That thereafter, some time in March, 1891, said Oscar Vansyckle, without the consent or knowledge of the respondent, executed a mortgage upon said lands in the sum of $1,000 to the Lombard Investment Company, his wife, the defend-

ant Elizabeth F. Vansyckle, joining with him in such mortgage. That he received from said mortgagee the full sum of $1,000, which he applied to his exclusive use, and concealed and withheld from the respondent the fact of the execution of such mortgage. That there-after, in October, 1892, the defendants Vansyckle, without the consent of the respondent, executed a quitclaim deed to appellant George J. Gardiner, conveying said premises to him subject to the mortgage aforesaid. That thereupon said Gardiner and appellant Cora Gardiner, his wife, went into possession thereof, and thereafter, and until the commencement of this action, continued in possession.

It is conceded by the appellants, and the proof upon the question is abundant to show, that at the time appellant George J. Gardiner took the quitclaim deed last mentioned from Vansyckle, he had knowledge of all the facts and circumstances connected with and surrounding the execution of the deed upon the part of respondent to said Vansyckle, and that for some time before receiving Vansyckle's quitclaim to the premises, he was advised and familiar with all of said facts and circumstances; that he is the son-in-law of Vansyckle; that he paid no consideration whatever for said quitclaim deed.

These are substantially the facts that were established upon the trial below, and which are embraced in the record brought to this court. In their separate answer the appellants Gardiner set up two affirmative defenses to the plaintiff's cause of action, in the first of which it is asserted that the agreement made between the respondent and the defendant Oscar Vansyckle, by which said Vansyckle was to hold the premises in trust for the respondent, was a verbal agreement; that no memorandum of said agreement

was made in writing at the time said deed was executed, or prior or subsequent thereto, and that the same falls within the statute of frauds. And the remaining defense is that said deed from respondent to Vansyckle was made voluntarily by the respondent, for the purpose of placing said premises beyond the reach of the creditors of the respondent, and especially for the purpose of defeating the collection of any claim or judgment that the said Conrad might have or secure against the respondent.

There was a trial to the court and a judgment rendered in favor of plaintiff, canceling the deeds from respondent to Vansyckle and from Vansyckle to Gardiner, and awarding possession of the premises to the respondent; and a personal judgment against the defendant Vansyckle for the sum of $1,000, the amount realized by him as a result of the mortgage to the Lombard Investment Company.

We will consider these defenses in the order in which they were interposed; and first, then, as to the agreement between respondent and defendant Vansyckle being within the statute of frauds. The respondent contends not for the enforcement of the trust made in parol between himself and Vansyckle, but insists that the transaction raises a trust *ex maleficio*, which is not within the statute. In vol. 2 of Pomeroy's Equity Jurisprudence, § 1053, it is said:

"In general, whenever the legal title to property, real or personal, has been obtained through actual fraud, misrepresentations, concealments, or through undue influence, duress, *taking advantage of one's weakness or necessities*, or through any other similar means or under any other similar circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus ac-

quired in favor of the one who is truly and equitably entitled to the same;  . . .  and a court of equity has jurisdiction to reach the property either in the hands of the original wrong-doer, or in the hands of any subsequent holder, until a purchaser of it in good faith and without notice acquires a higher right, and takes the property relieved from the trust."

We think that the transaction falls squarely within the purview of this authority, and that the rule laid down by Pomeroy has been generally adopted, and received the sanction of the courts without exception. *Brison v. Brison*, 75 Cal. 525 (17 Pac. 689; 7 Am. St. Rep. 189); 1 Story, Eq. Jur., § 187.

The parol promise upon the part of Vansyckle, and upon which the plaintiff relied, was made in bad faith and with intent to deceive, and hence amounted to an actual fraud.   It was made by him without any intention of performing it; and the construction which the statute of frauds has almost universally received is that it excepts from its operation trusts which arise from fraud, either actual or constructive.  This we conceive to be the principle upon which the rule laid down by Pomeroy, Story and the other writers on the subject, rests.

As to the second defense set up, viz., that the conveyance by respondent to Vansyckle was a voluntary one and was made for the purpose of defrauding respondent's creditors, and particularly one Conrad, it does not appear from the evidence that respondent was indebted to any person whatever, or that Conrad had any legal or equitable claim against him.   But it is insisted by appellants that the obvious intention of respondent was to place his property where Conrad, should he become a judgment creditor, could not reach it; and this must be conceded.   And it is further insisted by appellants that the respondent and Vansyckle

are *in pari delicto*, and that equity will afford no relief under such circumstances. We think it may be conceded that the rule is well settled, especially as to executed contracts, that if the parties be *in pari delicto*, they will be left where they have placed themselves; they do not come into court with clean hands. If, however, one party is but an instrument in the hands of another, then they cannot be said to be *in pari delicto*. *Harper v. Harper*, 85 Ky. 160 (3 S. W. 5; 7 Am. St. Rep. 583); *Poston v. Balch*, 69 Mo. 115; *Davidson v. Carter*, 55 Iowa, 117 (7 N. W. 466).

On this subject the court of appeals of Kentucky, in *Harper v. Harper, supra,* page 166, say:

"If the mind of one of the participants in the transaction exercises an undue influence over that of the other, whether by imposition or threats upon the one side, and confidence or weakness upon the other, equity will grant relief to the latter. Even if the party had sufficient capacity to contract, yet if, through trusting confidence, the other has led him into the illegal act and then imposed upon him, such relief will not be refused."

In Story's Equity Jurisprudence (vol. 1, § 300) the learned author says:

"And indeed in cases where both parties are *in delicto*, concurring in an illegal act, it does not always follow that they stand *in pari delicto*; for there may be, and often are, very different degrees in their guilt. One party may act under circumstances of oppression, imposition, hardship, undue influence, *or great inequality of condition or age;* so that his guilt may be far less in degree than that of his associate in the offense."

And again, in § 238:

"The doctrine, therefore, may be laid down as generally true, that the acts and contracts of persons who are of weak understandings, and who are thereby liable to imposition, will be held void in courts of equity, if

the nature of the act or contract justify the conclusion that the party has not exercised a deliberate judgment, but that he had been imposed upon, circumvented or overcome by cunning or artifice or undue influence."

Again, in 2 Pomeroy, Equity Jurisprudence, § 942, it is said:

"When the contract is illegal, so that both parties are to some extent involved in the illegality — in some degree affected with the unlawful taint — but are not *in pari delicto* — that is, both have not, with the same knowledge, willingness and wrongful intent, engaged in the transaction, or the undertakings of each are not equally blameworthy — a court of equity may, in furtherance of justice and of a sound public policy, aid the one who is comparatively the more innocent, and may grant him full affirmative relief, by . . . setting aside an executed contract, conveyance or transfer, . . . as the circumstances of the case shall require."

And the courts appear to act unhesitatingly upon this principle. *Williams v. Collins*, 67 Iowa, 413 (25 N. W. 682), Bump, Fraudulent Conveyances, 448, and cases there cited.

It would, in our opinion, be a reproach upon the law if a person should be permitted to profit by a transaction effected in the manner that this one was. A confidence was reposed by respondent which was grossly abused by Vansyckle. Taking advantage of this confidence in him, and of the reliance that respondent had in his superior business sagacity; taking advantage, also, of the ignorance and weak intellect of the respondent, and of his excitement, apprehension and alarm (whether unfounded or not does not matter) growing out of his relations with Conrad, and assuring him of his friendship and desire to assist in what he encouraged the respondent to believe was an entirely innocent transaction, Vansyckle secured from respond-

ent a conveyance of eighty acres of valuable land, without any consideration paid or promised, upon which he thereafter secured a loan of $1,000 for his sole use; and subsequently conveyed the premises to appellant Gardiner ( his son-in-law), who took the conveyance with full knowledge of all the circumstances, assurances and promises attending the transfer from respondent to Vansyckle. The rule of law that denies relief to suitors who are *in pari delicto* is not violated by restoring to this respondent the premises in question, and defendants, upon the record here produced, cannot be permitted to invoke that rule to shield them from the consequences of a fraud in the consummation of which they were the principal actors and the sole gainers.

Upon the trial of the cause in the lower court evidence was introduced for the purpose of showing that appellant George J. Gardiner took the conveyance from Vansyckle pursuant to an agreement with the respondent, by the terms of which Gardiner was to pay respondent $1,000, and to assume the mortgage that had been placed upon the land by Vansyckle; and that Vansyckle was to pay respondent $1,000, proceeds of the mortgage loan; and appellant Gardiner asks that such agreement be enforced in the event of this court deciding the questions above considered against him, and that he be permitted to retain the land in question and the title thereto, and that respondent be awarded a lien upon it for $1,000, the balance of the purchase price under such asserted agreement.

This evidence, we think, was wholly inadmissible under the pleadings; but as no objection appears to have been made to it upon the trial below, we have considered it and deem it sufficient to say that no definite or binding agreement is established by the

evidence.  No money was paid at the time by Gardiner, nor was any time fixed or mentioned when he should be required to pay, and it is altogether too indefinite and uncertain to enable a court upon the record presented here to entertain or enforce it.  Moreover, we are constrained to believe, from a careful consideration of the entire record, that whatever arrangement of that sort was undertaken between them was merely a subterfuge or contrivance concocted by Gardiner and appellant Vansyckle, the better to enable them successfully to consummate a fraud upon the respondent and conceal and obliterate the evidences of it.

We think the judgment of the lower court should be, and it is, in all things affirmed.

HOYT, C. J., and SCOTT, ANDERS and DUNBAR, JJ., concur.