[No. 17103. Department Two. November 1, 1922.]

BURT W. JOHNSON, *Respondent*, v. JANE H. JOHNSON *et al., Appellants.*[1]

TRUSTS (3, 11)—EXPRESS TRUSTS—ORAL AGREEMENT TO RECONVEY—EVIDENCE—SUFFICIENCY. An express trust by which a wife agreed to re-deed property conveyed to her by her husband must be proved by a writing, and fails where the execution of a lost writing was not shown with sufficient certainty.

SAME (20, 22-1)—CONSTRUCTIVE TRUSTS—FRAUD IN ACQUISITION OF PROPERTY—EVIDENCE—SUFFICIENCY. It appears that there was such fraud by a wife in procuring deeds from her husband as to raise a trust *ex maleficio* in his favor against her, where he was illiterate, she urged the making of the deeds for their mutual benefit, agreeing to reconvey at any time; and they were prompted by failing health and possibility of death in the near future, and belief in mutual marital love and affection, when, at the time, she had a secret love affair and improper relations with another and had formed the intention to abandon him.

HUSBAND AND WIFE (6)—TRUSTS (20)—GIFTS—INDUCED BY FRAUD. When the wife, by fraud, induced the husband to make deeds of all his possessions as a gift to her, but in reality relying upon and in consideration of love and affection fraudulently professed for him, he is entitled to a cancellation and recovery of the property upon proof of present failure of all consideration.

[1]Reported in 210 Pac. 382.

Appeal from a judgment of the superior court for Pacific county, Hewen, J., entered September 19, 1921, in favor of the plaintiff, in an action for equitable relief, tried to the court. Affirmed.

*Vince H. Faben* and *S. H. Kelleran,* for appellants.
*Flick & Paul,* for respondent.

PARKER, C. J.—The plaintiff, Burt W. Johnson, commenced this action in the superior court for Pacific county, seeking the setting aside of a deed of conveyance of certain timber land in that county made by him to his wife, the defendant Jane H. Johnson, and the quieting of title to the land in himself as against the claims of his wife and the additional defendants made under that and subsequent conveyances of his wife. Plaintiff's claim of relief is rested principally upon the ground of fraud in the procuring of the conveyance from him to his wife, the want of consideration supporting the subsequent conveyances to her grantees, and their notice of his present claim to the property. A trial upon the merits resulted in a decree awarding to the plaintiff the relief prayed for by him, from which the defendants have appealed to this court.

The trial judge did not make formal findings of facts, but did render a written opinion wherein he reviewed the facts with evident painstaking care. We have read all of the evidence as presented to us in the abstract proposed by counsel for Mrs. Johnson and have arrived at the same view of the facts as that entertained by the trial judge. We think the controlling facts may be summarized, so far as here necessary to notice them, as follows: Mr. and Mrs. Johnson were married at Fairbanks, Alaska, in July, 1907. He had then acquired real property in this

state of considerable value, among which was the timber land here in question, it having been purchased by him with the proceeds of mining property he had acquired and caused to be worked in Alaska for several years prior to their marriage. They continued to live in Alaska until 1918. In January, 1915, Mr. Johnson executed deeds conveying all of his real property to Mrs. Johnson, one of which deeds conveyed to her the timber land in question. These deeds conveyed practically all of his property he then had any interest in, separate or community. Possibly a comparatively small part of the property so conveyed was their community property, but the land here in question was, in any event, his separate property. The deed here in question was, in due time, recorded in the office of the auditor of Pacific county. These deeds all recited the consideration as "one dollar" and "love and affection." The evidence renders it plain that there was in fact no money consideration whatever.

Mr. Johnson claims that these conveyances were made because of his ill health, but with the understanding and agreement with her that he should have reconveyance, at any time should he so desire, of any or all of the property during his lifetime; which agreement he claims was evidenced by a writing signed by her and which has since become lost. The execution of any such writing by Mrs. Johnson was, we think, as the trial judge concluded, not proven with sufficient certainty to show that there was created an express trust of the nature claimed by Johnson. In other words, the effort to prove an express trust such as must be proven by a writing, under the statute of frauds, failed. However, as we shall presently see, Mr. Johnson proved such fraud on the part of Mrs.

Johnson in procuring the deeds as raised a trust *ex maleficio* in his favor as against her, enabling equity to award him reconveyance of the property.

Mr. Johnson is very illiterate, He can barely write his own name, and in all his business transactions requiring reading and writing he is almost wholly dependent upon others. This may account for his belief that there had been some writing signed by Mrs. Johnson negativing the idea that these conveyances absolutely deprived him of all interest in the property. For some time prior to the making of these conveyances, Mrs. Johnson had urged him to convey all of his property to her, giving him to understand that she would hold it so that they both would have the benefit of it in so far as their living necessities might require, and that she would reconvey it to him at any time he might desire her to do so. This proposal on her part, finally acquiesced in by him, was evidently prompted by his then failing health and the possibility of his death in the comparatively near future. She claims that the conveyances were made as simple, absolute gifts to her, but she does not have the hardihood to claim that their making was prompted on his part by anything other than the love and affection he, as a husband, bore her, and his abiding conviction of the love and affection, as a wife, she bore him. Nothing could seem plainer than that the conveyances would never have been made by him had he in the least suspected that this mutual marital love and affection, as he then believed it to exist, would be impaired during his lifetime.

Some time prior to the making of these conveyances, Mrs. Johnson had become acquainted with one C., which acquaintanceship had ripened into a friendship between them amounting to what might well be char-

acterized as a love affair at the time of the making of the conveyances. As to that friendship having progressed to such a stage at the time of the making of the deeds, Mr. Johnson was then wholly ignorant and without the least cause to suspect. Some two years after that time, Mrs. Johnson left Alaska and came to this state. C. came to this state near the same time. Their association here leaves little room for escaping the conclusion that their relations were far from what should obtain between a man and another man's wife. A short time after Mrs. Johnson came to this state, Mr. Johnson followed her. He then first became fully convinced that she had become estranged from him. She then informed him that she contemplated a divorce. A short time thereafter there was a reconciliation between them, but it was of short duration. He made an effort to persuade her to reconvey the property to him, making offers to her which, had they been accepted, would have provided for her support in a substantial manner, should she continue living apart from him. She claimed the land as her absolute property, refused to reconvey any part thereof to him, and declined to longer live with him. Without reviewing the evidence here in detail, we deem it sufficient to say that we are convinced, as the trial judge was, that Mrs. Johnson had, at the time of the making of the conveyances to her, made up her mind to abandon him and had induced him to convey the property to her, then intending abandoning him and appropriating it to her exclusive use. This is the most charitable view we can take of her conduct prior to the making of the deeds. This conduct on her part, we think, was in no sense the justifiable result of any marital wrong or neglect on his part. Since conveying the land to her, he has continually paid all taxes thereon. This

she practically admits was done with her knowledge and consent.

Whether we regard the conveyance as having been made by Mr. Johnson in pursuance of an oral agreement with his wife that she would hold the property in trust for him as his separate property or in trust for the community, she then having a present intention to claim absolute ownership thereof; or whether we regard the conveyance as a gift in consideration of the marital love and affection he bore her and the marital love and affection he then believed she bore him; the facts we have above summarized we think argue all but conclusively that he is entitled to now be restored to the ownership of the property as it existed at the time of the making of the conveyance in January, 1915. If she took the property by that conveyance in pursuance of a promise by her to hold it either for him or for the community, then intending to violate that promise, and did violate it, as we think the evidence shows, she committed a fraud entitling him to the relief he seeks. If the conveyance was a gift, as she claims, in which event it was manifestly made in consideration of the mutual marital love and affection which he then believed existed between them, she then having the intention to abandon him and sever their marriage relations, she committed even a more grievous fraud, entitling him to the relief he now seeks.

Upon the first proposition, the decision of this court in *Rozell v. Vansyckle,* 11 Wash. 79, 39 Pac. 270, is conclusive against Mrs. Johnson in this case. There was drawn in question in that case a promise by a grantee to his grantor, which promise induced the making of the conveyance in question, that he, the grantee, would hold the property in trust for the

grantor and reconvey it to the grantor upon his request; there being no consideration for the conveyance, the trust attempted to be so created being not unlawful within itself, though not provable as an express trust because of the statute of frauds; the relationship of the parties being one of trust and confidence; the grantee having a present intention to violate his promise and claim the property as his own; and the grantee thereafter violating his promise, in keeping with his secret intention existing at the time of receiving the conveyance. It was held that, while the trust was not provable as an express trust because of the statute of frauds, it not being evidenced in writing, it was provable by oral evidence as one arising *ex maleficio,* entitling the grantor to be restored to his legal title in the property. In so holding, Judge Gordon, speaking for this court, said:

"In vol. 2 of Pomeroy's Equity Jurisprudence, § 1053, it is said:

" 'In general, whenever the legal title to property, real or personal, has been obtained through actual fraud, misrepresentations, concealments, or through undue influence, duress, *taking advantage of one's weakness or necessities,* or through any other similar means or under any similar circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same; . . . and a court of equity has jurisdiction to reach the property either in the hands of the original wrong-doer, or in the hands of any subsequent holder, until a purchaser of it in good faith and without notice acquires a higher right, and takes the property relieved from the trust.'

"We think that the transaction falls squarely within the purview of this authority, and that the rule laid down by Pomeroy has been generally adopted, and re-

ceived the sanction of the courts without exception. *Brison v. Brison,* 75 Cal. 525 (17 Pac. 689; 7 Am. St. Rep. 189); 1 Story, Eq. Jur., § 187

"The parol promise upon the part of Vansyckle, and upon which the plaintiff relied, was made in bad faith and with intent to deceive, and hence amounted to an actual fraud. It was made by him without any intention of performing it; and the construction which the statute of frauds has almost universally received is that it excepts from its operation trusts which arise from fraud, either actual or constructive. This we conceive to be the principle upon which the rule laid down by Pomeroy, Story and the other writers on the subject, rests."

Many decisions and texts could be cited in support of this view of the law and its applicability to the facts of this case. This is not a case of mere failure to perform a trust agreement apart from an intent not to perform existing at the time of making the trust promise which induced the conveyance, as in *Brown v. Kausche,* 98 Wash. 470, 167 Pac. 1075.

But suppose the conveyance was intended as a gift, as claimed by Mrs. Johnson. Still she must fail in her effort to hold the property because of her fraud inducing the conveyance to her by her trusting husband. Mr. Johnson's making, and his wife's receiving, the conveyance under the circumstances here shown, it has no supporting consideration whatever. That is, the consideration which was intended by Mr. Johnson to support it utterly and absolutely failed. That consideration manifestly was not only the love and affection which Mr. Johnson bore his wife, but the love and affection which he, in good faith, believed that she bore him, in the absence of which, had he known it, the conveyance would never have been made by him. It may be, generally speaking, proper to characterize a conveyance by a man of practically all of

his worldly belongings to his wife, without consideration of monetary value, as a gift; but, as a matter of fact, it is not, when prompted by mutual marital love and affection which the grantor believes to exist between them, a gift in the sense that the grantor expects nothing in return. It is in real truth a conveyance for a consideration; to wit, a conveyance in consideration of present and future mutual marital love and affection. Such manifestly was the consideration which Mr. Johnson thought he was receiving, and expected to receive during the remainder of his life, for this conveyance. Many authorities can be cited supporting this view of the law. Among others coming to our attention we note the following, involving conveyances from one spouse to the other: *Thomas v. Thomas,* 27 Okl. 784, 109 Pac. 825, 113 Pac. 914, Ann. Cas. 1912C 713, 35 L. R. A. (N. S.) 124; *Dickerson v. Dickerson,* 24 Neb. 530, 39 N. W. 429, 8 Am St. 213; *Evans v. Evans,* 118 Ga. 890, 45 S. E. 612, 98 Am. St. 180; *Meldrum v. Meldrum,* 15 Colo. 478, 24 Pac. 1083, 11 L. R. A. 65; *Murdock v. Murdock,* 49 Cal. App. 775, 194 Pac. 762; *Hursen v. Hursen,* 212 Ill. 377, 72 N. E. 391, 103 Am. St. 230; *Basye v. Basye,* 152 Ind. 172, 52 N. E. 797; *Clarkson v. Pruett,* 201 Ala. 632, 79 South. 194.

These decisions support the view that the anticipation of future amicable marital relations, whether implied or expressed, becomes the consideration that supports a conveyance from one spouse to another where there is no money or valuable consideration to support such conveyance, even though it be called a gift for want of a better and more exact characterization. Manifestly the failure of consideration for such conveyance can occur when there is a failure of present mutual marital love and affection, believed by the

grantor to exist and known by the grantee not to exist. Such is this case. Every consideration of right dictates that Mrs. Johnson should not be permitted to hold this property as against the claims of her husband here made.

As to the additional defendants and appellants, it does not seem to be seriously argued that they stand other than exactly in the shoes of Mrs. Johnson. It seems plain to us that whatever claims of interest they have in this property have no consideration to support them and were acquired with notice of Mr. Johnson's claim here made.

Some claims of error touching pleadings and procedure in the case are made and but briefly presented. We think it sufficient to say that we regard them as without merit.

The decree of the superior court setting aside the deed in question and quieting the title to the property in respondent, Burt W. Johnson, as against all of the defendants is, we think, eminently just, and is in all things affirmed.

HOLCOMB, MAIN, MACKINTOSH, and HOVEY, JJ., concur.