*157 MEMORANDUM
COX, J.
The husband sues for an accounting for rents received by the wife from property (a tract of about two acres in Takoma Park) conveyed to them as joint tenants. The wife by cross complaint seeks to establish that the interest in the property in the name of the husband is held in trust for her and to require its conveyance to her.
The parties were married November 13, 1913, and lived together in the District until July 6,1931. At the time of the marriage the husband was employed by the District of Columbia. About three years later he resigned his position and soon afterward went to work at the Washington Navy Yard, where he was employed until 1922. He was then out of work for a period of about nineteen months, during which the parties lived and worked together on the property in suit. The husband then obtained employment as general mechanic at Gallaudet College, where he received a salary of $80 (later $110) a month, together with quarters for himself and wife. He held the place and they lived at the College until 1931.
The land in suit is part of a five-acre tract situate in Takoma Park in which the wife inherited from her mother a one-third interest, the other two-thirds going to her brother and sister. The wife and her sister purchased the one-third interest of their brother and later the wife purchased the entire interest of her sister. The conveyance from the sister was made to the parties (husband and wife) as joint tenants. The entire amount paid for the two-thirds interest, including all sums paid to the brother and sister, came out of the proceeds of the sale of parts of the tract, aggregating about three acres, leaving about two acres, the land in suit, free and clear of all encumbrances. In March, 1919, the parties conveyed the entire title to the land in suit to a trustee, who in turn deeded it back to them in fee simple as joint tenants, the effect of the *158 conveyance being to vest the entire title in them as tenants by the entirety. The husband desired and had insisted upon this conveyance, on the ground that unless it was so conveyed it would, in case she pre-deceased him, revert to her heirs. It was in his mind to protect his possession and interest during his lifetime, and not to deprive her heirs of any ultimate remainder. According to the testimony of both parties, it was their mutual desire that upoii the death of both the property should revert to the heirs of the wife.
The consideration to the wife for placing the title jointly in herself and husband was the mutual marital love and affection of the parties and the expectation and intention that they should continue to live together as husband and wife and that the wife should continue to receive the .care and support of the husband.
The wife appears to have been the manager of the finances of the family up to July, 1931. The husband regularly turned over to her his earnings, or at least the principal part thereof. She supplied him with funds as needed, paid the bills, including the monthly payments for automobiles, four of which were purchased while they lived at the College. She kept a joint bank account in their names. She also worked from time to time as a seamstress and in this way added to the income; and, also, deposited to the account the $45 received monthly from the joint property.
A serious controversy between the parties arose when the husband decided to give up his position at Gallaudet College and take his wife to live at the home of his daughter in Maryland. The wife earnestly protested against the change without avail. They removed to the home of his daughter and he undertook to run a roadside vegetable stand from which he says his earnings have not been sufficient to provide him with the necessities of life. He has a pension from the United States of $281.28 a year.
*159 The residence with the daughter was an unhappy experience. The wife attempted to work about the house and roadside stand, but conditions were unsatisfactory and she considered herself under the necessity of going out to obtain work as a seamstress. The husband resented this and brought her effects to the home of her niece, where she was stopping at the time.
It also appears that she was charged with having stolen from the daughter household articles while living there. The husband repeated these charges on the witness stand and said he could prove them. He also charged that her opposition to his removal from Gallaudet was due to her desire to see him killed and her hope that he would fall from a building at his work there so that she might get his insurance. There was no basis whatever in fact for any of the charges.
After her husband brought her effects to her from the daughter’s home, there was some effort to induce her to return, but he made no proposal to provide for her elsewhere than at his daughter’s. The court finds that under the conditions existing she was justified in refusing to return to live with him there. Counsel for both sides have agreed, and the court finds, that there is no reasonable probability of the parties being reconciled or living together again. The wife has made no demand and the husband has contributed nothing to her support since she left the daughter’s home. She has been receiving the rents from the tract of land in suit, which net about $37 per month.
Upon these findings the court concludes that:
(a) The bill for an accounting should be dismissed. The wife has not been in fault in any way. She holds title as a. tenant by the entirety. The husband has not been contributing to her support, and the amount she has received is certainly not more than enough to meet her necessary expenses.
(b) The cross complaint should be sustained. It seems clear the conveyance to the husband was based on the implied *160 condition that the marital relations of the parties should continue. As these relations have subsequently been terminated through the fault of the party receiving the conveyance a constructive trust arises for the benefit of the injured party. This conclusion is supported, and it is thought, required by the decisions of the Court of Appeals in Moore vs. Moore, 51 App. D.C. 304; 278 Fed. 1017; and Osborne vs. Osborne, 59 App. D.C. 288, 40 Fed.(2d) 800. -Counsel for plaintiff have urged that these decisions are not controlling for the reason that in both of them a divorce had been awarded the husband and the marital relation thus definitely and finally terminated. But both decisions cite with approval and rely upon the case of Dickerson vs. Dickerson, 24 Neb. 530, 8 Am. St. Rep. 213 — in which there was no decree of separation or divorce and in which the facts seem essentially similar to the facts in this case. See also: Brison vs. Brison, 75 Cal. 625, 7 Am. St. 189; and Evans vs. Evans, 118 Ga. 890, 98 Am. St. Rep. 180, both cited by the Court of Appeals; and Johnson vs. Johnson, (Wash.), 210 Pac. 382; Thomas vs. Thomas, 109 Pac. 825 (Okla.).
The defendant is entitled accordingly to a decree establishing that the right and interest in the tract held in the name of the plaintiff is held in trust for her and directing the execution of an appropriate deed of conveyance in her favor.