[No. 26773.   Department Two.   April 14, 1939.]

*In the Matter of the Estates of* MARY SWARTWOOD *and* LIZZIE WELSHER, *Deceased.*

THOMAS W. WEBB *et al., Appellants,* v. JAMES F. TAYLOR *et al., Respondents.*[1]

*Ballinger, Clark, Mathewson & Force,* for appellants.

*Kahin & Carmody,* for respondents.

STEINERT, J.—In the course of a probate proceeding involving the joint administration of two estates, the administrator filed a claim on behalf of himself and

[1]Reported in 89 P. (2d) 203.

another claimant against the consolidated estates, seeking to have certain real property, which had been inventoried therein, conveyed to the claimants in specific performance of a prior oral agreement alleged to have been had with a former owner of the property; or otherwise, to have the remainder of the estate awarded to the claimants in recognition of an alleged trust.

Subsequently, the administrator filed his final report and petition in the proceeding asking that the claim be approved and that the entire estate be distributed to the two claimants. The heirs at law of one of the decedents appeared and interposed objections to the report and petition. Upon a hearing by the court, an order was entered sustaining the objections and dismissing the claim. The administrator and his co-claimant, together with their wives, have appealed.

The property involved in this controversy consists of certain real estate in King county formerly owned by one James Coonan, a bachelor, resident in that county. Coonan acquired title to the property in 1914 and retained ownership thereof until his death on December 30, 1929. He left no will, and appellant Thomas W. Webb was duly appointed administrator of his estate. Pursuant to Webb's final account and petition, filed in October, 1930, the estate was distributed to Coonan's two sisters and sole heirs at law, Mary Swartwood and Lizzie Welsher, both of Port Huron, Michigan. Mrs. Swartwood died intestate in the summer or fall of 1935, leaving as her sole heir at law her surviving sister, Lizzie Welsher. In February, 1936, while the estate of Mrs. Swartwood was in progress of settlement, Mrs. Welsher died intestate, leaving as her sole heirs at law the respondents in this case. Subsequently, Thomas W. Webb, upon his own petition, was appointed ancillary administrator of the Swartwood and Welsher estates.

According to appellants' claim and petition, their relative rights to the property are predicated upon three successively asserted sets of fact and circumstances: (1) That Coonan, in consideration of the care that appellants Webb had given him and the care which they had promised to give him during the remainder of his life, had "agreed that said property was theirs [the Webbs']," and, in consideration of future care by them without compensation, had "agreed to give them said property;" (2) that, in 1928, prior to Coonan's death, Mary Swartwood, his sister, had stated to appellants Thomas W. Webb and A. E. Knight that, "because of what they did for her," she would see that Webb and Knight would receive, share and share alike, "all of said property," the petition alleging that, after the death of Coonan, Mrs. Swartwood, in consequence of her prior declaration, held the property in trust for appellants, but that she died without making a transfer of the legal title to them; and (3) that, in December, 1935, after Mrs. Swartwood's death, Lizzie Welsher on two occasions had stated in writing that she wanted appellants Thomas W. Webb and A. E. Knight to "share in" the property, that it was Mrs. Welsher's intention to convey the property to Webb and Knight, but that, owing to her death, her intention was never fulfilled. Upon these asserted facts and circumstances, taken as a whole, appellants contend that the property is impressed with a trust in their favor.

The first predication, it will be observed, advances two alternative theories, namely, (1) an oral promise by Coonan given for a consideration; and (2) a trust declaration by him.

The testimony respecting the alleged promise came from members of the Webb family, from appellant Knight, and from a Mrs. Towey, a disinterested witness. The sum and substance of their testimony upon

that subject was that Coonan had on various occasions stated that some day the property would belong to the Webbs, or would be left to them. The testimony with respect to the consideration for the promise was that for many years Coonan had lived in the home of the Webbs, which adjoined his property, that he and the Webbs had worked together in improving both properties, and that Mrs. Webb had nursed and cared for Coonan while he was seriously sick at different times. However, Mrs. Webb testified that what she had done for "the old man" was simply an expression of friendship and regard for him. As to the work upon the land, the evidence indicates that it amounted to nothing more than a friendly exchange of labor between Coonan and the Webbs in the mutual improvement of their respective properties. The most that can be said for such agreement, were it sufficiently established, is that it was an oral contract to devise or bequeath property.

It is settled beyond dispute in this state that such contracts, although enforceable, must be established by evidence that is conclusive, definite, certain, and beyond legitimate controversy. *Resor v. Schaefer,* 193 Wash. 91, 74 P. (2d) 917; *Wayman v. Miller,* 195 Wash. 457, 81 P. (2d) 501; *Osterhout v. Peterson, ante* p. 166, 87 P. (2d) 987, in which cases many authorities are cited. The instant case falls within the inhibition of that rule, for the evidence regarding the oral contract does not approach the degree of certainty required.

As to the theory of a declaration of trust by Coonan, it is sufficient to say that there is no testimony whatever that Coonan ever stated that he was holding the property in trust for appellants, or either of them, or for anyone else. The fact that Webb administered Coonan's property and procured a decree of distribu-

tion vesting complete title in Mrs. Swartwood and Mrs. Welsher is almost conclusive evidence that Webb did not believe that an enforceable trust had been set up in his favor. We will discuss the trust feature in more detail under a subsequent heading.

■ The second predication upon which the claim is based relates to transactions and conversations had with Mrs. Swartwood, and it, in turn, proceeds upon alternative theories of a promise and of a declaration of trust by her.

The evidence with respect to a promise is contained in the testimony of three witnesses. Appellant Knight testified that, after Coonan's death, Mrs. Swartwood had told him that the Webbs would be repaid for what they had done for Coonan, and that some day the property would be left to Webb. Pauline Gallagher, a daughter of Mr. and Mrs. Webb, testified that in 1931 she had written to Mrs. Swartwood, offering to buy one of the lots included in the property, and that Mrs. Swartwood had referred her to the Webbs as "they have charge of it" and "if they said O. K. it would be all right with her." Mrs. Towey, referred to above, testified that she had at one time purchased a piece of land from Mrs. Swartwood through Webb, and that in 1930 Mrs. Swartwood had told her that her future dealings should be with Mr. Webb, that the Webbs had taken care of Coonan all his life, and that some day the property would belong to them.

Manifestly, this testimony was insufficient to establish, as against Mrs. Swartwood, an enforceable contract to convey or to devise the property. Nor did that testimony afford a possible basis for a claim that there was any admission, express or implied, by Mrs. Swartwood that she was holding the property in trust for appellants, or for any one else.

■ The third and final predication upon which the

claim is based relates to the written expressions of Mrs. Welsher and her intention to transfer the property to appellants. It is under this head that appellants contend that, as a culmination of all the acts and expressions of the three decedents, the property became impressed with a trust in their favor.

The broad contention is made that the acts, conduct, and statements of Coonan, the expressions of Mrs. Swartwood, and the letters of Mrs. Welsher together with certain statements made by her in conversation with her attorney in Michigan, constitute a declaration of trust by Coonan and Mrs. Swartwood, and an acknowledgment of such trust by Mrs. Welsher.

It appears from the record that, a short time before her death, Mrs. Welsher consulted her attorney with reference to the disposition of her property, including that involved here. She stated to her attorney that she had written to Webb and Knight, telling them that it was her intention that they should have "the Seattle property." The attorney thereupon offered to draw the necessary deeds, but Mrs. Welsher replied that she did not desire to transfer the property then, but only upon her death. The attorney thereupon suggested that she prepare a memorandum setting forth a list of the various dispositions that she might desire to make by will. A memorandum was prepared by her, but neither the appellants nor the property here involved were mentioned therein. At any rate, no will was ever made by Mrs. Welsher.

Appellants' theory seems to be that the evidence as a whole discloses a transaction wherein Coonan and Mrs. Swartwood became, and were, settlors of a trust in favor of appellants, and that Mrs. Welsher acknowledged the trust relationship and herself became a trustee of the property for the same purposes and to the same extent. Manifestly, appellants are seeking

to establish an express trust through the declarations of three successive owners of the property.

To the extent that a person has capacity to transfer property *inter vivos,* he also has capacity to create a trust by declaring himself trustee of the property, and the trust may be so created even though the declarant receives no consideration for the declaration. Restatement of the Law of Trusts, §§ 18-28.

However, by the English statute of frauds, 29 Charles II, c. 3, and by similar statutes adopted in about three-fourths of the American states, trusts of "lands, tenements or hereditaments" are required to be manifested and proved by some writing signed by the party who is by law enabled to declare the trust, or by his last will in writing. 1 Bogert, Trusts and Trustees, §§ 61-64.

Our statute, Rem. Rev. Stat., § 10550 [P. C. § 1908-21], provides:

"Every conveyance of real estate, or any interest therein, and every contract creating or evidencing any encumbrance upon real estate, shall be by deed: . . ."

While our statute does not closely follow the wording of the English statute, it has long been made the basis of our holdings that an express trust concerning realty must be evidenced in writing. *Pilcher v. Lotzgesell,* 57 Wash. 471, 107 Pac. 340; *Kinney v. McCall,* 57 Wash. 545, 107 Pac. 385; *Kalinowski v. McNeny,* 68 Wash. 681, 123 Pac. 1074; *Arnold v. Hall,* 72 Wash. 50, 129 Pac. 914, 44 L. R. A. (N. S.) 349; *Nichols v. Capen,* 79 Wash. 120, 139 Pac. 868, affirmed on rehearing, 82 Wash. 698, 144 Pac. 294; *In re Mason's Estate,* 95 Wash. 564, 164 Pac. 205; *In re Parkes' Estate,* 101 Wash. 659, 172 Pac. 908; *Farrell v. Mentzer,* 102 Wash. 629, 174 Pac. 482; *Riddle v. Henderson,* 124 Wash. 31, 213 Pac. 480; *In re Weir's Estate,* 134 Wash. 560, 236 Pac.

564

285; *Pacheco v. Mello,* 139 Wash. 566, 247 Pac. 927; *Zioncheck v. Nadeau,* 196 Wash. 33, 81 P. (2d) 811.

In the instant case, there is no evidence of any writing in which either James Coonan or Mary Swartwood declared that the property was held by them in trust, or in which Lizzie Welsher acknowledged that there was such a trust, or that she was holding the property in a similar capacity. At best, the evidence amounts to nothing more than that those individuals intended at some time to convey the property by deed, or else devise it by will, to appellants. That, however, did not create an express trust.

The order dismissing the claim is affirmed.

BLAKE, C. J., MAIN, JEFFERS, and ROBINSON, JJ., concur.