[No. 33136. *En Banc.* February 16, 1956.]

NAPOLIAN DOWGIALLA, *Respondent*, v. JOHN KNEVAGE *et al.*, *Appellants.*[1]

[1]Reported in 294 P. (2d) 393.

*John Panesko*, for appellants.

*Arthur R. Paulsen* and *Max R. Nicolai*, for respondent.

OTT, J.—May 19, 1900, Napolian Dowgialla obtained a patent from the United States government to one hundred sixty acres of timberland in Lewis county. April 4, 1924, he and his wife deeded the property to his nephew, John Knevage. August 20, 1952, Mr. Dowgialla commenced this action.

His complaint alleged that he deeded the property to defendant Knevage (who will be referred to herein as though he were the sole defendant) to take care of it until it could be sold; that plaintiff trusted the defendant; that the de-

fendant orally promised that he would take the property, pay the taxes, and, when he sold it, plaintiff would receive one half of the proceeds after the expenses were paid; that, relying upon these promises and the confidential relationship existing between them, plaintiff deeded the property to defendant; and that no consideration was paid to plaintiff at the time of the execution and delivery of the deed.

Plaintiff further alleged that the promises were false and fraudulent; that defendant had no intention of keeping them at the time they were made; that, February 23, 1951, defendant sold the timber for forty-two thousand dollars, at which time he paid plaintiff the sum of one thousand dollars; that demand had been made for the balance due; and that payment thereof had been refused.

The complaint prayed for an accounting of the proceeds of the sale and that plaintiff be adjudicated to be the owner of an undivided one-half interest in the real estate.

The defendant answered the complaint, admitting the execution and delivery of the deed and denying the allegations of fraud or that any oral agreement had been made. The defendant affirmatively pleaded that such an oral agreement, if found to exist, was void as being within the statute of frauds, in that such an agreement involved an interest in real estate which was not in writing and which, by its terms, was not to be performed within one year from the making thereof. The answer also pleaded laches.

The reply denied the affirmative matters pleaded in the answer.

The cause was tried to the court, with an advisory jury.

At the trial, plaintiff and defendant were the only witnesses who testified to the transactions leading up to the execution and delivery of the deed. Plaintiff testified that he had faith and confidence in his nephew and wanted him to have the land, and that, when the deed was delivered, defendant orally promised to pay him one half of the proceeds when he sold the land or the timber. His testimony concerning the actual oral promise made in 1924 was as follows:

"Q. Did John make any promise to you at that time? A. We talked and talked about that, I said, 'John is the best man for that, to head that.' Then I told him, 'John, of course, I put lots of work there and the money—so when you sell it, then we go and split fifty fifty.' 'Well,' he says, 'that's all right.' Q. And did you have this talk with him before you made the deed? A. I talked to him before I made the deed. Q. And did you trust him at that time? A. Yes. Q. And was it because you trusted him that you gave him the deed? A. Well, I trusted him—well, to be the best man, I trust him."

When asked why he gave defendant the deed, plaintiff testified:

"I give it—you see, it's pretty far to walk for the children to school. That is why I moved to Burnett, and worked in the mines. They couldn't go to school two miles and half. . . . Q. Tell me, why did you give John Knevage the deed to the place? Really now, why did you give it to him? A. He was a good boy, you know. He was the best boy around here, so he is working in the woods and I working in the mines. Well then, taking care of it— . . . If I got enough money to stay there, then work on the farm— but on account of them children, they got to go to school, so I got to go there and work there. Q. Well, Mr. Dowgialla, you didn't live on the place from 1902 to 1924. Who took care of it then? A. That's what I said, I ain't got enough money to stay there."

Although the taxes were five years delinquent, plaintiff testified that he could have paid the amount then due by borrowing the money.

When questioned as to whether the alleged oral agreement was to be performed within one year, plaintiff testified as follows:

"Q. All right now, going back to this timber, when you gave John the deed in 1924 how long was John supposed to keep the place? . . . how many years? A. When the timber going to be ready to sell—second growth too small. . . . Q. . . . did you have it in mind that he had to keep it for several years, for quite a while? A. Yes. Q. Could he sell it the first year, or was it too small? A. Was too small, but he keep it until some right time to sell. . . . Q. And would that take several years or not? A. Several years, yes. . . . Q. And isn't it true that ac-

cording to your story, you planned that John was to keep it for several years, until it grew up, is that right? A. That's right."

The defendant testified that, in 1924, five years taxes, in the sum of seven hundred dollars, were delinquent, and that he suggested that plaintiff deed the land to him, if he was going to let it be sold for taxes. After considering defendant's proposal, the plaintiff and his wife voluntarily went to a justice of the peace the next morning, where, at their request, the deed was prepared and delivered to defendant. He denied promising to pay any consideration. He further testified that plaintiff had stated that he was indebted two or three thousand dollars on his new home and that he could not raise the seven hundred dollars for delinquent taxes and intended to let the property be sold; that defendant was advised that the county commenced foreclosure proceedings after five years taxes were delinquent and so informed plaintiff. Defendant told plaintiff that others were interested in acquiring the land, but that he did not know if they would pay any more than the delinquent taxes for it, and that he had suggested to those who had made inquiry to contact plaintiff direct.

Defendant testified that, in 1932, he sold the timber on seventy-eight acres of the land for one thousand eighty dollars and, in 1936, permitted the seventy-eight acres to be foreclosed for taxes. He gave no part of the 1932 proceeds to plaintiff. In February, 1951, he sold the timber on the remaining eighty-two acres for forty-two thousand dollars. Shortly after this sale was consummated, he gave plaintiff one thousand dollars as a gift. Nearly a year thereafter, plaintiff for the first time approached defendant, contending that there had been an oral agreement in 1924 to divide equally the proceeds from the sale of the timber.

Although the law permitted foreclosure for delinquent taxes after five years, a deputy county treasurer testified that the practice in Lewis county at that time was to permit seven years of delinquency before foreclosure. There was no testimony that defendant knew of this custom.

The court found that defendant obtained the deed by fraud, in falsely representing that there would be a tax sale in the fall, when two years of grace remained, and that defendant fraudulently failed to disclose that there were other prospective purchasers for the timberland. The trial court further found that the deed was executed and delivered upon the terms of the alleged oral agreement; that defendant's promise was made in bad faith, without any intention of performance; and that defendant took advantage of the relationship, confidence, and trust that existed between him and plaintiff at the time the deed was executed. The court ordered an accounting, and thereafter entered judgment against the defendant for one half of the net proceeds of the sale of the timber.

The defendant has appealed. He assigns as error the court's finding of fact that there was an oral agreement to sell the land or timber and divide the net proceeds.

■ No aspect of fraud or abuse of a confidential relationship is involved concerning this particular finding. The testimony with reference thereto was in direct conflict. In our view, the court's finding is not contrary to the clear preponderance of the evidence.

Appellant next challenges the court's finding of fact to the effect that he was guilty of actual fraud in connection with the transaction, and that a confidential relationship existed between respondent and appellant, which the latter abused.

This finding was made in support of the trial court's conclusion of law that the transaction in question had given rise to a constructive trust.

The pertinent statutes provide, in part, as follows:

RCW 19.36.010 [*cf.* Rem. Rev. Stat., § 5825]: "In the following cases any agreement . . . shall be void, unless such agreement . . . is in writing, and signed by the party to be charged therewith, . . .

"(1) Every agreement that by its terms is not to be performed in one year from the making thereof; . . . "

RCW 64.04.010 [*cf.* Rem. Rev. Stat., § 10550]: "Every

conveyance of real estate *or any interest therein,* . . . shall be by deed: . . ." (Italics ours.)

RCW 64.04.020 [*cf.* Rem. Rev. Stat., § 10551]: "Every deed shall be in writing, signed by the party bound thereby, and acknowledged by the party before some person authorized to take acknowledgments of deeds."

■ Because of these statutes, an express trust in land cannot be established by parol. *Laughlin v. March,* 19 Wn. (2d) 874, 877, 145 P. (2d) 549 (1944), and cases cited. These statutes, however, do not preclude the use of parol evidence to establish a constructive trust. *Moe v. Brumfield,* 27 Wn. (2d) 714, 717, 179 P. (2d) 968 (1947), and case cited; *Kausky v. Kosten,* 27 Wn. (2d) 721, 727, 179 P. (2d) 950 (1947).

In the instant case, respondent's complaint contains no allegations of fraud relative to the imminence of a tax sale, nor did respondent, as a witness, testify as to any such fraudulent representation or his reliance thereon. Respondent's testimony was that he would have been able to borrow sufficient money to pay the amount of the delinquent taxes.

Appellant testified that, on the occasion in question he told respondent that the taxes were delinquent for the five years from 1919 to 1923, and that, unless they were paid, the property would be sold for taxes in the coming fall.

Chapter 113, Laws of 1917, which was in effect in 1924, provided that "After the expiration of five years from the date of delinquency, . . . the county treasurer shall" proceed to foreclose the tax lien.

Although the deputy county treasurer testified that it was then the practice not to sell property for taxes unless such taxes were seven years delinquent, there is no testimony that appellant knew of this custom. In any event, the representation made by appellant on the basis of a mandatory statute cannot be characterized as false because of an existing custom to disregard the statute.

■ We hold that the evidence clearly preponderates against the finding of fact that appellant's representations as to the imminence of a tax sale were fraudulent.

The finding relative to fraudulent concealment relates to

appellant's asserted failure to disclose that there were prospective purchasers of the tract and to convey to respondent their requests for information concerning the sale price.

In his complaint, respondent did not allege such fraudulent nondisclosure, nor did he testify to that effect. The only testimony concerning this was given by appellant. Considered in the light most favorable to respondent, it was to the effect that, before appellant called on respondent, several persons had talked to appellant about the property and had indicated an interest in acquiring it. They had asked him to inquire of respondent the cost of obtaining the land, but appellant had suggested that they contact respondent direct. Appellant did not know if they were interested in taking over the property for back taxes or in buying it. He told respondent of these inquiries.

■ This is not clear, cogent, and convincing evidence that appellant failed to disclose that there were prospective purchasers of the tract, or that he failed to convey this information to respondent. The evidence fails to support the finding of fraudulent concealment.

The remaining finding relative to actual fraud is that, without any intention of carrying out such agreement, appellant promised to care for the land, pay the taxes, and divide the net proceeds from the sale of the land or the timber thereon. This is the one element of fraud upon which respondent relied in his complaint.

■ While this oral promise was not fulfilled, such failure does not establish that the promise was made in bad faith. See *Lovell v. Dotson*, 128 Wash. 669, 223 Pac. 1061 (1924); *Richards v. Lockhart*, 173 Wash. 668, 24 P. (2d) 113 (1933); *Carkonen v. Alberts*, 196 Wash. 575, 83 P. (2d) 899, 135 A. L. R. 209 (1938).

Appellant testified that, when respondent conveyed the land to him, he had no intention of giving respondent any of the proceeds of the property. This was consistent with appellant's testimony that no oral promise was made. It does not constitute an admission that appellant made a promise in bad faith and without then intending to keep it.

■ We hold that the evidence clearly preponderates against the finding of fact that appellant acted fraudulently in orally promising to divide the net proceeds with respondent.

■ Further, even if it can be said that there was bad faith on the part of appellant in 1924, the bad faith, if any, should have been discovered by respondent in 1932, when the timber was cut on the seventy-eight acres, and again in 1936, when, as a matter of public record, appellant permitted the seventy-eight acres to be sold for taxes. The removal of the timber in 1932 was openly and obviously done. The slightest examination of the property on the part of respondent would have disclosed to him that the mature timber had been cut and that he had not received his share of the proceeds.

■ Also, appellant's failure to pay the taxes was a direct violation of the alleged agreement. This breach was a matter of public record during the term of delinquency prior to the tax sale. One cannot be heard to say that he did not know of these matters which were open, obvious, and of public record. *Davis v. Rogers*, 128 Wash. 231, 237, 222 Pac. 499 (1924); *Teeter v. Brown*, 130 Wash. 506, 510, 228 Pac. 291 (1924), and cases cited; *Henriod v. Henriod*, 198 Wash. 519, 527, 89 P. (2d) 222 (1939), and cases cited.

We agree with appellant that, upon this record, no constructive trust can be predicated upon fraud.

Do circumstances exist, short of actual fraud, which are sufficient to establish a constructive trust in this case? Respondent points to findings of the trial court to the effect that he relied upon appellant's oral promise because of the relationship of trust and confidence which existed between them.

■ We have several times held that circumstances of this kind establish only an oral express trust, which is unenforcible under the statute of frauds. See *Arnold v. Hall*, 72 Wash. 50, 129 Pac. 914 (1913), where a son conveyed property to his mother in trust, upon her promise to reconvey it to him; *Nichols v. Capen*, 79 Wash. 120, 139 Pac. 868 (1914), where a father conveyed land to his son, who was acting as

administrator, for the purpose of disposing of the lands to pay the debts of the estate, under his agreement to reconvey all that remained; *Brown v. Kausche,* 98 Wash. 470, 167 Pac. 1075 (1917), where a husband devised all of the community property to his wife, under an oral agreement to divide it among the children; *In re Parkes' Estate,* 101 Wash. 659, 172 Pac. 908 (1918), 105 Wash. 586, 178 Pac. 830 (1919), where a stepson conveyed to his stepmother, in consideration of the latter's agreement to will all of her estate to him upon her death; *In re Weir's Estate,* 134 Wash. 560, 236 Pac. 285 (1925), where a mother devised all of her property to a daughter, upon her oral promise to devise the remainder to her sister; and *Pacheco v. Mello,* 139 Wash. 566, 247 Pac. 927 (1926), where property was deeded to an agent, for the purpose of making a sale.

■ Where the oral promise to hold in trust, which induced the conveyance, was made in bad faith, a constructive trust comes into existence because this establishes actual fraud. *Rozell v. Vansyckle,* 11 Wash. 79, 39 Pac. 270 (1895); *Johnson v. Johnson,* 122 Wash. 117, 210 Pac. 382 (1922); *Kausky v. Kosten, supra.* However, we have found that respondent failed to prove that the oral promise here in question was made in bad faith.

■ We conclude that a constructive trust may not be predicated upon the fact that the conveyance was made in reliance upon the appellant nephew's oral promise, not made in bad faith, even though a relationship of trust and confidence may have existed between him and respondent. It thus becomes unnecessary to decide whether the evidence clearly preponderates against the finding that there was a confidential relationship between them.

The trial court erred in concluding that a constructive trust came into existence, thereby taking this case out of the statute pertaining to interests in land.

Respondent argues that the portion of the judgment requiring a division of net proceeds can be sustained upon the ground that it gives effect to an oral express trust in the proceeds of a sale of timber, which is not within the statute of frauds because it does not involve an interest in land.

■ We find no merit in this contention. The 1924 transaction involved the sale of real estate. The transfer of title was accomplished by deed, not by a bill of sale. The consideration which was to be paid for the land, when it was conveyed to appellant, was to be a division of the proceeds of a future sale of standing timber. The standing timber did involve "an interest in land." *Beckman v. Brickley*, 144 Wash. 558, 561, 258 Pac. 488 (1927), holds that "Standing timber . . . partakes of the realty." See, also, *Larkins v. St. Paul & Tacoma Lbr. Co.*, 35 Wn. (2d) 711, 721, 214 P. (2d) 700 (1950).

■ According to respondent's testimony, quoted above, the standing timber was not to be severed for several years. The minds of the parties met upon the condition that the contract was not to be performed within one year. The agreement, therefore, falls squarely within the quoted portion of the statute of frauds. See *Tracy v. Barton,* 139 Wash. 440, 442, 247 Pac. 734 (1926), in which this court stated:

"We have held that, when no time for the performance of a contract is fixed by the parties, if it nevertheless appears from the surrounding circumstances and, considering the object contemplated by the contract, that the parties intended that it should extend over a year, recovery could not be had upon it, unless in writing. [Citing cases.]"

We conclude that the agreement with reference to the division of the proceeds from the sale of timber then growing upon the land in question did involve an interest in real estate. Since the oral agreement with reference thereto was not to be performed within one year, it was unenforcible and void.

For the reasons stated, the judgment of the trial court is reversed, and the court is directed to grant appellant's motion to dismiss the action.

MALLERY, SCHWELLENBACH, HILL, DONWORTH, and WEAVER, JJ., concur.

HAMLEY, C. J. (dissenting)—I am in agreement with the majority that actual fraud, as a basis for establishing a constructive trust, was not proved.

I also agree that it is the rule in this state that a relationship of trust and confidence between one making a conveyance in reliance on the grantee's oral promise, and such grantee, is insufficient to establish a constructive trust, in the absence of a showing of actual fraud. Our rule in this regard appears to be out of harmony with the general rule elsewhere. See 1 Restatement of Trusts 135, § 44, and comment c; Restatement of Restitution 730, § 182, and comment c; 3 (part 1) Bogert, Trusts and Trustees, 205 *et seq.*, § 496; 35 A. L. R. 280; 45 A. L. R. 851; 80 A. L. R. 195; 129 A. L. R. 689; 159 A. L. R. 997, annotations. I would favor a revision of our rule, if there were a majority to join me.

This dissent, however, is not directed to the point just mentioned, but is limited to the matters discussed in the last five paragraphs of the majority opinion. The majority there considers, but rejects, respondent's contention that the judgment is sustainable, to the extent that it requires a division of net proceeds, on the ground that it gives effect to an oral express trust with respect to the proceeds of a sale of timber, which trust is not within the statute of frauds, because it does not involve an interest in land.

The majority finds this contention to be without merit, for two reasons. The first such reason is that the 1924 transaction involved the sale of real estate, was accomplished by deed, not by a bill of sale, and concerned standing timber which partakes of the realty. It is apparently the view of the majority that, because of these circumstances, the recognition of an oral express trust in the proceeds of the timber sale would run counter to RCW 64.04.010 and .020, relating to the conveyance of real estate or any interest therein by deed.

With all due respect, it appears to me that the reason thus given misses the point of the contention. Respondent does not deny that the transaction involves an interest in land. The conveyance itself relates to specifically described acreage, and the agreement pertains to timber which, as the majority correctly points out, partakes of the realty.

What respondent contends is that, though the conveyance

and agreement to sell involve an interest in land, the *proceeds* of the timber sale, if and when made, do not represent an interest in land, and may therefore be the subject of an express oral trust. As I see it, the majority has not dealt with this contention, which is a matter of first impression in this state.

The fourth and seventh sections of the English Statute of Frauds (Statute 29, Charles II, chapter 3, enacted in 1676), requiring, respectively, that contracts for an interest in, or trust concerning, land be in writing, have no counterpart in our statute of frauds. RCW 19.36.010 [*cf.* Rem. Rev. Stat., § 5825]. See *Richards v. Redelsheimer*, 36 Wash. 325, 78 Pac. 934. However, our statute requiring every conveyance of real estate or any interest therein and every contract creating or evidencing an encumbrance upon real estate to be by deed (RCW 64.04.010 [*cf.* Rem. Rev. Stat., § 10550]) has been made to serve the same purpose. *In re Swartwood & Welsher Estates*, 198 Wash. 557, 89 P. (2d) 203; 1 Bogert, Trusts and Trustees, 394, § 64.

In other jurisdictions which depend upon similar statutes to serve the purpose of a statute of frauds relating to interests in land, the weight of authority appears to be that an oral promise to hold in trust the proceeds of a sale of land is not violative of the statute of frauds. See the cases cited in 154 A. L. R. 385, 389, annotation; 1 Restatement of Trusts 155, § 52, comment g; Restatement of Restitution 736, § 182, comment e; 3 (part 1) Bogert, Trusts and Trustees, 194, § 495; 1 Scott on Trusts 285, § 52.1.

The A. L. R. annotation referred to above contains the following statement introductory to the citation of decisions from fifteen jurisdictions:

"The rule appears to be general that an agreement as to the disposal of the proceeds of the sale of real estate is not rendered unenforceable as to such proceeds by the fact that in so far as the real estate itself is concerned, the agreement does not satisfy the provision of the statute of frauds relating to contracts for the sale of real property or an interest therein." (p. 389)

Comment g, of 1 Restatement of Trusts 155, § 52, reads as follows:

"g. *Transfer of land on oral trust of land and of proceeds.* If the owner of land transfers it to another person upon an oral trust to sell the land and to hold the proceeds in trust, the beneficiary cannot compel the transferee to sell the land; if, however, he does sell the land there is a valid contract to hold the proceeds in trust, and although the transfer of the land is the consideration for the promise to hold the proceeds in trust, the proceeds are personal property and the contract is not required by the Statute of Frauds to be in writing."

Bogert has this to say on the point:

"If land is conveyed on an oral promise to sell it and pay all or part of the proceeds to the donor or another, as previously stated, there should be no difficulty in enforcing an express trust in the money after the sale has occurred. The transaction should be regarded as a contract, made upon valuable consideration, to hold personalty in trust if and when it is acquired." (3 (part 1) Bogert, Trusts and Trustees, 194, § 495.)

I believe that this rule should be recognized and applied in this state.

The second reason advanced by the majority why an oral express trust in the proceeds of this timber sale should not be recognized is predicated upon our statute (RCW 19-.36.010), requiring agreements not to be performed in one year to be in writing.

I agree fully with the view of the majority that the agreement to sell the timber was not to be performed in one year, and is therefore unenforcible. But the question is whether, *having performed the agreement to sell the timber,* the promisor is obliged to divide the proceeds. This question is not dealt with by the majority.

There is here no question as to the enforcibility of a contract to take care of the property, pay the taxes, and sell the timber. All of this has been done. Respondent seeks only to obtain an accounting and payment of moneys owing to him under a contract otherwise fully performed. The provision of the statute of frauds in question is inapplicable where

the contract is fully performed except for the adjustment of expenses and the division of profits arising from the transaction. *Price v. Felumlee*, 60 Ohio App. 34, 19 N. E. (2d) 290.

There is, also, another reason why this provision of the statute of frauds is not a defense to this action. If someone hands me a rare book, upon my oral promise to sell the book two years later and divide the proceeds, my promise is unenforcible. But that does not mean that I may forever retain the book for myself, or the proceeds of the sale, if I choose to sell it.

Stating this proposition in the form of a general rule, if one who has received consideration under a contract which is unenforcible under this provision of the statute of frauds invokes the statute as a defense, he is under the duty of returning the consideration, in order to avoid unjust enrichment. *Union Savings & Trust Co. v. Krumm*, 88 Wash. 20, 152 Pac. 681; *Cone v. Ariss*, 13 Wn. (2d) 650, 126 P. (2d) 591. We will not permit the statute of frauds to be used to perpetuate a fraud. *Garbrick v. Franz*, 13 Wn. (2d) 427, 125 P. (2d) 295. The fact that the plaintiff has not specifically pleaded unjust enrichment is immaterial, if the facts pleaded and proved establish a right to recover on such theory. *Seekamp v. Small*, 39 Wn. (2d) 578, 237 P. (2d) 489. In view of the agreement originally reached by the parties, it would appear that one half of the net proceeds of the 1951 timber sale fairly measures the original consideration advanced by respondent.

The foregoing reasons lead me to believe that the judgment is sustainable, to the extent that it requires a division of net proceeds. That this would accomplish a just result is verified by the majority's conclusion that the trial court did not err in finding that there was an oral agreement to sell the land or timber and divide the net proceeds.

Accordingly, I would remand the cause, with directions to delete from the judgment all provisions reciting that Knevage holds the title to an undivided one-half interest in the property in question as trustee for respondent, and re-

quiring Knevage to execute and deliver to respondent a deed conveying such interest to respondent. In all other respects I would affirm.

FINLEY and ROSELLINI, JJ., concur with HAMLEY, C. J.

April 4, 1956. Petition for rehearing denied.